# NALLE v. YOUNG.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF LOUISIANA.

No. 17. Submitted October 15, 1895. — Decided January 20, 1896.

In 1868, Y., a citizen of Louisiana, being then married, mortgaged his interest in certain real estate in that State to E. H., his wife joining in the mortgage. In 1870 the father of Mrs. Y. died, leaving a policy of insurance in her favor. Y. collected this sum and converted it to his own use and the use of the community. In 1876, by a transaction between Y. and the residuary legatee of E. H., who was also indebted to Y., her said indebtedness was discharged, and Y.'s interest in that mortgage was assigned to Mrs. Y. in replacement of her paraphernal moneys and property, so secured and converted by her husband. In 1881 Mrs. Y. became entitled to a further sum, on the final settlement of her father's estate, which was in like manner received by Y., and converted to his own use and that of the community. In 1881, on the petition of Mrs. Y., filed in 1881 in a suit against her husband for a dissolution of the community and a separation of property, a decree to that effect was made by the

state court; and it was further adjudged and decreed that Y. was indebted to Mrs. Y. in the sums so received by him from her father's estate, with recognition of mortgage on the property described, and the property be sold to satisfy said judgment and costs. In 1882, in order to enable Y. to borrow from N. & Co., Mrs. Y. executed a mandate and power of attorney, authorizing the cancelling and erasure of the mortgage to E. H. What was done under that power was afterwards claimed by Y. and by Mrs. Y. not to amount to such cancellation, and by N. & Co. to be effective. A mortgage to N. & Co. was then executed by Y., and the inscription of Mrs. Y.'s mortgage was then renewed. In 1883 N. & Co. commenced proceedings to foreclose their mortgage, (Mrs. Y. not being made a party to the suit,) and obtained a decree of foreclosure in 1886. The property was duly appraised according to the law of Louisiana, and at the sale no sufficient bid was made. It was then advertised for sale on a credit of twelve months. In 1887, Y. notified the marshal that Mrs. Y. had an incumbrance on the property prior to the mortgage to N. & Co., (stating the amount of it,) and that a sale for less than that amount would be invalid. Notwithstanding this notice, a sale was made for a less sum. This sale was attacked by Y. and Mrs. Y. by various proceedings set forth in the opinion of the court, which resulted in a decree setting aside the sale, and adjudging that the attempted renunciation by Mrs. Y. of her special mortgage was invalid, and that that mortgage should be recognized as the first mortgage on the property, superior in rank to the mortgage of N. & Co. *Held,*

(1) That Mrs. Y. must stand upon her legal mortgage, resulting from the receipt of her paraphernal property, and recognized by the judgment of 1881, decreeing a separation of property; or upon a judicial mortgage arising from that judgment; or on the contract between herself and the residuary legatee of E. H.;

(2) That if her mortgage be held to be legal or judicial, its existence was not a bar to the confirmation of a sale for an amount insufficient to satisfy it, and that it could not rank the special conventional mortgage of N. & Co.;

(3) That by the transaction between the residuary legatee of E. H. and Mrs. Y., the respective debts were discharged by agreement and compensated each other, and when the principal obligation was thus discharged, the mortgage fell with it, and would not be revived, although the indebtedness were reacknowledged;

(4) That the decree below should be reversed.

EDWARD Nalle & Co., composed of Edward Nalle and Walter C. Flower, doing business in the city of New Orleans, filed their petition in the district court for the ninth district of Louisiana, holding sessions in and for the parish of Tensas, on May 30, 1883, against Wade R. Young, to foreclose a mortgage executed on June 2, 1882, to secure Young's note

for $1632.61, payable December 1, 1882, on his interest in certain real estate in that parish, known as the St. Peter plantation. The petition alleged "that said Wade R. Young resides permanently out of the State of Louisiana and is not represented in this State," and prayed for the appointment of a curator *ad hoc*. The appointment of a curator was made and citation served upon him. On June 25, 1883, Wade R. Young filed his answer to the petition, wherein he described himself as "a resident and citizen of the State of Mississippi," and on the same day filed his petition for the removal of the cause accompanied by a removal bond; and June 28, the district court entered an order transferring the case to the United States Circuit Court for the Western District of Louisiana, which was done accordingly. Plaintiffs thereupon prayed in that court that their petition be allowed to stand as a bill in equity, and October 12, 1883, the defendant Young filed his answer thereto, admitting the execution of the note and mortgage, but alleging in substance that he had been compelled to pay usurious interest; that the account current between the parties was composed of excessive and objectionable charges; that plaintiffs failed to carry out their agreement and understanding with him; and that upon a proper taking of accounts there was nothing or but little due.

In addition to his answer, to which a replication was filed, defendant made a reconventional demand, on which, upon a trial thereof, judgment passed against him. November 11, 1884, the cause was revived as to the heirs of Edward Nalle, who had deceased, and they entered their appearance March 24, 1885.

Proofs were taken, and the cause was referred to a master to state an account, who made a report of the amount due to Nalle & Co., less a specified credit. The cause coming on to be heard on the pleadings and proofs and oral testimony then adduced, a decree was entered November 6, 1886, "that plaintiff's mortgage on the property described in the act of mortgage annexed to the bill of complaint herein, viz.: [here follows description] the said interest of Wade R. Young in the above lands having been ascertained by a survey made by

John Johnson, surveyor, on the 15th of March, 1879, be and the same is hereby, recognized, and ordered to be enforced to satisfy the sum of one thousand six hundred and thirty-two $\frac{61}{100}$ dollars, with 8 per cent per annum interest thereon from the 1st day of December, 1882, until paid, subject to the credit aforesaid, and also for the payment of the attorney's fees stipulated by said act of mortgage, being 5 per cent on said amount, and the costs of this suit, to be taxed."

An execution was thereupon issued, and the mortgaged premises seized and sold by the marshal, July 30, 1887, to Mrs. Mary Nalle, wife of Eustis F. Golson.

October 12, 1887, Mrs. B. F. Young, wife of Wade R. Young, on motion of her husband as her solicitor, was allowed to file " her bill and intervening petition, by her husband and next friend," against Nalle & Co., in which she averred that she was married to Wade R. Young in October, 1865, and resided with him continually in the State of Louisiana until the month of February, 1876; that in the year 1870 her father died in the parish of Catahoula, Louisiana, and left her a policy of insurance on his life for the sum of $5000, which was collected by her husband for her and by him converted to his own use and to the use of the community existing between them; that her father also left a large estate, consisting of property, real and personal, which was sold at probate sale in 1881, and her interest therein, amounting to $2500, adjudicated to her husband for his own sole use, benefit and advantage, and for that of the community existing between them; and that her husband had so received the paraphernal moneys and property of complainant in the sum of $7500, which had been converted by him to his own use and that of the community, and was now legally due complainant by her husband.

The petition further alleged that by an act of mortgage in 1868 by Margaret A. Young, William C. Young, and Wade R. Young, as joint owners, St. Peter plantation was mortgaged to Miss Eliza H. Young, to secure their joint and several note for $11,250, with interest at eight per cent from January 1, 1867; and averred that in the year 1876, by a transaction between her husband and Mrs. S. J. Metcalfe, as

sole surviving residuary legatee of Miss Eliza H. Young, and complainant, an undivided four ninths of that note and mortgage, being the individual indebtedness of her husband thereon, was assigned to her by Mrs. Metcalfe by express warranty; that a new note was then made and delivered to her and accepted by her in replacement of her paraphernal moneys and property, so secured and converted by her husband. It was further averred that in 1881 complainant brought suit against her husband for a dissolution of the community and a separation of property in the ninth district court in the parish of Tensas, and obtained judgment therein on the — day of — for said sum of $7500 and interest, with a recognition of her mortgage on the property described and a decree dissolving the community of acquets and gains between them; that in 1882, her husband desiring to execute a mortgage on the property in favor of Nalle & Co. to secure advances of money and supplies to enable him to carry on certain planting operations, at the request of Nalle & Co., applied to complainant to renounce her prior right of mortgage in favor of Nalle & Co., by authorizing the cancelling and erasure of the inscription of the mortgage transferred to her by Mrs. Metcalfe, so as to give Nalle & Co. the first mortgage; that Nalle & Co. refused to make any advances until given priority of rank; that for that purpose complainant executed a mandate and power of attorney authorizing the cancelling and erasure of her mortgage, and "upon such authority the said mortgage was attempted to be cancelled;" that the mortgage to Nalle & Co. was then executed by her husband; and that the inscription of her mortgage was then renewed. Petitioner then alleged that at the October term, 1886, a decree was rendered at the suit of Nalle & Co. against her husband for the foreclosure of their mortgage, the amount of indebtedness fixed, and the sale of the property ordered; that final process was issued in execution of that decree, and in obedience thereto the marshal advertised the property for sale for cash on Saturday, July 2, 1887; that on that day the property was appraised according to the requirements of the Louisiana law, and offered to the highest bidder for cash at not less than two-

thirds of the appraised value, which had been placed at the sum of $6000, and, no bid having been made, was advertised for sale on a credit of twelve months; that on July 30, 1887, her husband, as defendant, served notice and protest on the marshal of the prior incumbrance in favor of complainant for $7500 and interest, and that any sale for a price less than the amount of such prior incumbrance would be invalid; that notwithstanding the notice and protest the marshal, acting under the direction of Nalle & Co.'s solicitor, accepted the bid of one of them for $2000. Complainant charged that her attempted renunciation of her rights authorizing the erasure of her mortgage was of no effect under the laws of Louisiana, and set forth the grounds on which that charge was based; that her mortgage was the first incumbrance and superior to the mortgage in favor of Nalle & Co.; that no sale could be made to a purchaser for less than the amount of such mortgage; and that the attempted sale was absolutely null and void. It was further averred that Nalle & Co. pretended to have paid the taxes on the mortgaged property for the years 1882, 1883, 1884, 1885, and 1886, amounting to the sum of $624.60, and to have become subrogated by such payments to the privilege of mortgage existing in favor of the State and parish, and claimed a priority of lien on the mortgaged premises in consequence of such payment and subrogation; that no such taxes were legally due on the mortgaged property; and that Nalle & Co. and Mrs. Mary Nalle acquired no right by such payment and attempted subrogation. The petition then charged that the revenue acts of Louisiana for 1880, 1882, 1884, and 1886, in pursuance of which these taxes were levied, were unconstitutional and void as repugnant to the state constitution. It was further alleged that notwithstanding complainant had a first and prior incumbrance for $7500 and interest, Nalle & Co. did not make complainant a party to the foreclosure proceedings, according to the practice of the Circuit Court as a court of equity, and had caused the proceedings to be brought in disregard of complainant's rights, and had endeavored to have the mortgaged property sold and adjudicated to one of themselves for a low price, etc.; that if the

renunciation of complainant was invalid as charged, no valid sale could be made for a price not exceeding the amount of the prior mortgage, and the attempted sale would be null and void; that if the renunciation for any reason not known to the complainant was valid and binding, complainant was entitled to redeem by paying the amount of the prior incumbrances, if any such there might be; and that for the purpose of securing equitable protection, it had become necessary for complainant to intervene in the foreclosure suit, and to oppose the confirmation of the sale in order that a reference might be made to determine the priority of liens and adjust all conflicting claims.

Petitioner therefore prayed to be allowed to file this intervention *pro interesse suo*, and that Nalle & Co. (that is, Flower and the heirs of Nalle) be summoned to answer by writ of subpoena served on their solicitor; that the sale of the mortgaged premises by the marshal on July 30, 1887, be not confirmed but be set aside; that a reference be made to have the priority of liens determined and all conflicting claims adjusted; that a valid title be assured to the purchaser, and a sale made for the best interests of all concerned; that the attempted renunciation of her mortgage in favor of Nalle & Co. be declared null and void, and her mortgage recognized as the first and superior incumbrance on the property; that the revenue acts of Louisiana for 1880, 1882, 1884, and 1886 be declared unconstitutional, null and void; that the taxes levied in pursuance thereof be declared of no effect, and for general relief. This intervention was not sworn to, and was signed " Wade R. Young, solicitor." On the 24th of October, 1887, Mrs. Young and her husband prayed to amend their original petition by alleging that although Young removed with his family from Louisiana to Mississippi in 1876, he did not at that time establish a residence in Mississippi, and that it was not until January, 1883, that he abandoned finally his intention to return to Louisiana, renounced his residence and citizenship there, and declared himself a citizen of Mississippi with the intention of remaining permanently.

The copy attached to the intervening petition showed an

act of mortgage, March 18, 1868, by Wade R. Young, William C. Young, and Margaret A. Young, of the parish of Tensas, to Miss Eliza H. Young, to secure their certain promissory note for $11,250, payable with interest at eight per cent one year after date, on the property in question, being part of Lake St. Peter's plantation, with a confession of judgment; Mrs. B. F Liddell, wife of Wade R. Young, and Mrs. Willie T. Evans, wife of William C. Young, ratifying said act of mortgage, and renouncing all their rights in the property therein mortgaged, upon due examination separate and apart from their husbands; and an acceptance by Eliza H. Young. Upon the record of this mortgage in the parish of Tensas appeared the cancellation of five ninths thereof, being the indebtedness of W. C. Young, one of the mortgagors, and special legatee for M. A. Young, deceased, leaving four ninths of the indebtedness of Wade R. Young for himself and as special legatee for M. A. Young, deceased, still unpaid; also the cancellation and erasure of the mortgage to the extent of the remaining four ninths on the 5th of June, 1882, under a power of attorney signed by Wade R. Young and his wife, Mrs. B. F. Young, whereby Charles Young of the parish of Tensas was constituted and appointed attorney in fact with full and complete power in the name of Mrs. Young to cause the act of mortgage to be cancelled and erased. This power of attorney was executed June 1, 1882, in the presence of two witnesses, who signed the act with the parties, as did also the notary. The cancellation and power of attorney were duly certified as correct copies of the original as the same appeared on file and of record in the office of the clerk of the ninth district court of Tensas parish.

The act of transfer from Mrs. Metcalfe to Mrs. Young was dated December 2, 1876, and stated that Mrs. Metcalfe, residing in the parish of Catahoula; Wade R. Young of the parish of Concordia; and Mrs. B. F. Liddell, wife of Wade R. Young, " herein represented by her special attorney and attorney in fact, Volney M. Liddell, with a procuration hereto annexed," personally appeared before the notary and declared that whereas Mrs. Metcalfe, as sole surviving residuary legatee of

Miss Eliza H. Young, was the holder and owner of the note of Wade R. Young, William C. Young, and Margaret A. Young for the sum of $11,250, secured by act of mortgage; and whereas Mrs. Metcalfe was indebted to Wade R. Young for certain sums of money; and whereas Wade R. Young was indebted to his wife, Mrs. B. F. Liddell, for $7500, the dotal and paraphernal property of his wife, received by him, and converted to his own use, for the repayment of which his wife had a legal mortgage on the interest of her husband in his father's estate; therefore Mrs. Metcalfe transferred and assigned to Mrs. Young four ninths interest in said promissory note and mortgage, being the portion thereof due by Wade R. Young, and bearing on his interest in the St. Peter plantation, and warranted the validity thereof; and Wade R. Young declared that in consideration of the transfer and warranty by Mrs. Metcalfe, he thereby acknowledged the receipt of the four ninths interest of the note and mortgage, and granted to Mrs. Metcalfe an acquittance *pro tanto* of the sums due by her to him; and Mrs. Young declared that she accepted the transfer and assignment of said four ninths interest, and, in consideration thereof, and of the warranty by Mrs. Metcalfe of the validity of the note and mortgage, joined her husband "in so far as the mortgage accorded to her by law to secure the repayment of her paraphernal funds may bear upon the interest of her said husband in the succession of his deceased father, in giving to the said Mrs. S. J. Metcalfe an acquittance and release *pro tanto* of the sum due by her." This was signed by Wade R. Young, V. M. Liddell, attorney; S. J. Metcalfe, two witnesses, and the notary public, and a certificate was attached by the recorder of Catahoula parish that the foregoing was a true and correct copy of the original act of transfer and agreement on file in his office and recorded in its records December 6, 1876. There was also a certificate, under date of October 18, 1887, of the clerk of the ninth district court of Tensas parish that the foregoing was a true and correct copy of the copy of the act of transfer and agreement, "as the same now appear on file in my office and of record there." The copy of the judgment of Mrs. Young against her husband was as follows:

"9th District Court, Parish of Tensas.

"Mrs. Bethia F. Liddell
       *vs.*.       } No. 3050.
Wade R. Young, her husband.

"In this case a regular trial was had after issue joined, and the law and the evidence being in favor of the plaintiff and against the defendant, it is ordered, adjudged, and decreed that there be judgment of separation, dissolving the community of acquets and gains between the plaintiff, Mrs. Bethia F. Liddell, and the defendant, Wade R. Young, and that the said plaintiff do have and recover judgment against the defendant for the sum of $7500, seven thousand five hundred dollars, with a recognition of her mortgage on the property described in the petition, and that the same be sold to satisfy said judgment and costs.

"Thus done, read, and signed in open court this 9th day of July, 1881.           Wade H. Hough,
                         " *Judge 9th District.*"

This was certified to by the clerk of the ninth district court as "a true and correct copy of original judgment rendered in suit of 'Bethia F. Liddell *vs.* Wade R. Young, her husband,' as the same appears on file and of record in my office in mortgage book 'O,' page 649 *et seq.*, on June 5, 1882."

On the same day the intervening petition was filed, Young filed what was entitled an "opposition to confirmation of sale," in which it was alleged that plaintiffs had attempted to proceed according to the practice of the courts of Louisiana, and in doing so had violated the rules and practice prescribed in the conduct of equity cases in the Circuit Court; that there was a want of parties; that there existed a prior incumbrance on the property fully equal to or exceeding its value, and that by the laws of Louisiana no valid sale of the property could be made for a price not exceeding the amount of such prior incumbrance. He then set forth the mortgage of 1868 in favor of Miss Eliza H. Young, to secure the $11,250 note; the transaction between Mrs. Metcalfe, his wife and him-

self of 1876; the judgment of 1881 in favor of his wife for $7500; the renunciation by his wife of her prior right of mortgage in favor of Nalle & Co.; and the execution of the mortgage to Nalle & Co. to secure the payment of his note for $1632.61, with interest at eight per cent until paid; and charged the renunciation to have been invalid. The rendition of decree in favor of Nalle & Co. against defendant for the foreclosure of their mortgage; the issue of final process in execution of the decree, and the proceedings and sale thereunder, were rehearsed at length, as in the intervening petition; and it was averred that his wife's mortgage was a first incumbrance, and that no sale or adjudication could be made to a purchaser for less than the amount of the mortgage. It was further alleged that the marshal in the second advertisement of the property for sale on twelve months' credit required the purchaser out of the price to deduct and pay in cash an amount for printing, marshal's fees, and clerk's fees, as well as taxes due on the property, and that much the largest amount required to be paid was claimed by Nalle & Co., or one of them, for taxes alleged to have been paid by them or him on the property, the legality of which was contested by defendant and by his wife; that this requirement was an oppressive and unjust act towards the mortgagor, and deterred a purchaser with whom defendant had arranged to buy; and other irregularities were set forth. As to the claim of the payment of taxes for the years 1882, 1883, 1884, and 1885, and as to the taxes pretended to be due for the year 1886, the payment of which the marshal made a condition precedent to the accepting of any bid, no taxes were due and no necessity existed for the payment thereof, and that Nalle & Co. acquired no rights by such payment and subrogation, and thereupon the grounds on which the illegality was charged were given at considerable length. Defendant prayed that the sale be not confirmed and be set aside; that his wife be made or allowed to become a party to the suit; that a reference be made to a master to settle the priority of liens; that the renunciation of his wife be declared invalid, and her mortgage for $7500 and interest be decreed the

first lien on the property and prior in rank to Nalle & Co.; that the revenue acts of Louisiana for the years 1880, 1882, 1884, and 1886 be decreed unconstitutional, null, and void, and the inscription of the mortgage to secure the taxes be erased as a cloud, and for general relief. And he further prayed that, if it be determined that the sale was a valid sale, he might be allowed to redeem by paying to complainants the amount of the debt, interest, and costs, and such other sums as might be found to be legally due.

Defendant also filed what he styled a cross-bill against the marshal, Mrs. Mary Nalle, and her husband Golson, and Nalle & Co., alleging the sale of the property by the marshal and the acceptance of the bid of Mrs. Mary Nalle, notwithstanding a written protest by defendant against the acceptance of any bid not exceeding $7500, the amount of the prior incumbrance; that the marshal attempted to transfer the possession of the property to Nalle & Co., or Mrs. Mary Nalle for them, by giving complainants' solicitor an order to take such possession; and that the marshal and Mrs. Mary Nalle were now seeking to evict defendant from the possession of his property, and were trespassing thereon, all of which was without color of right; that the marshal had no power to pass the title to Mrs. Nalle until the oppositions to the sale had been tried and determined and the sale confirmed, and that, even if he had, the sale was absolutely null and void because the amount of the bid did not exceed the amount of the prior special mortgage; and prayed for an injunction, whereupon a restraining order was issued, and subsequently a writ of injunction.

Nalle & Co. demurred to the petition of intervention, and moved to dismiss the opposition and dissolve the injunction. The motion was denied and the demurrer overruled. Thereupon Nalle & Co. answered the intervening petition of Mrs. Young and the cross-bill and opposition to confirmation of sale of Wade R. Young, alleging that Mrs. Young was, at the time of the erasure and cancellation of her alleged mortgage, to wit, June 1, 1882, a citizen of the State of Mississippi, and as such *sui juris* in every respect, having, under the laws of said State, full capacity as a *feme sole* to make any contract

whatever; denying that Wade R. Young moved his family to the State of Mississippi in 1876 with the intention of retaining, or that he did retain, either an actual or constructive domicil in the State of Louisiana; averring that the alleged agreement between Mrs. B. F. Young and Mrs. Metcalfe and Wade R. Young, under date of December, 1876, was null and void for reasons given; and that Mrs. Young and Wade R. Young were in equity and good conscience estopped from setting up her alleged mortgage. Wade R. Young and his wife filed a replication to the answer of Nalle & Co. and others "to the cross-bill and intervening petition."

The case came on to be heard "upon the cross-bill and opposition to the confirmation of the sale and the intervening petition" and the various papers heretofore referred to were offered in evidence as well as sundry depositions, and "generally everything of record in the suit." On June 9, 1890, the court entered a decree, whereby it was "ordered, adjudged, and decreed that the sale of the mortgaged property made by the marshal, in pursuance and execution of the foreclosure decree, be set aside, cancelled, and avoided. And it is further ordered, adjudged, and decreed that the attempted renunciation by the intervening petitioner, Mrs. Bethia F. Young, of her special mortgage on the property, was and is invalid and of no effect, and that said mortgage be recognized as the first mortgage on the property, superior in rank to the mortgage of the plaintiffs, E. Nalle & Co., and entitled to be paid by preference. And it is further ordered that the plaintiffs, E. Nalle & Co., pay the costs of the sale and of these proceedings."

From this decree Nalle & Co. and Mrs. Mary Golson, as purchaser, appealed to this court.

*Mr. Charles J. Boatner* for appellants.

*Mr. Wade R. Young* for himself and Mrs. Young, defendants in error.

Mr. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

The proceedings in the state court were ordinary and not executory, and in the Circuit Court the petition stood as a bill in equity to foreclose a mortgage. The decree of November 6, 1886, was a final decree, and the execution may be regarded as the equivalent of a direction to a master or commissioner to make sale in the enforcement thereof. Under the civil code and code of practice of Louisiana judicial sales are conducted by the sheriff or other public officer in the manner minutely described, and adjudicated to the purchaser, who thereupon becomes the owner of the article adjudged. Civil Code, Art. 2601 to Art. 2621; Code of Prac. 663 *et seq.* But in an equity foreclosure in a Circuit Court, while the requirements of the state law should be complied with and the forms of proceeding pursued as nearly as practicable, it is proper for the officer who makes the sale to make a report or return to the court for confirmation. Resistance to such confirmation may be made, under circumstances, and this sometimes results in the setting aside of the sale and an order for a resale. But the scope of these pleadings was much wider. To the confirmation of the sale the defendant, indeed, interposed objections, waiving any formal report for confirmation, but they were not passed upon by the Circuit Court independently of defendant's alleged cross-bill and the petition of Mrs. Young in intervention and these papers may all be considered together, as they were by the Circuit Court, and so treated they constituted in effect an independent suit brought by Young and his wife to set aside the sale and have the alleged mortgage of the wife declared the prior incumbrance and enforced; or for redemption.

The objections in respect of alleged irregularities in the conduct of the sale, or the invalidity of certain taxes and the requirement of their payment, need not be considered, as they are not sustained by the record, and mere informalities or irregularities in a judicial sale in Louisiana do not constitute a sufficient ground for setting it aside. *Stockmeyer* v. *Tobin,* 139 U. S. 176.

The principal objection to the sale was the insufficiency of the bid at which the property was disposed of, and that objection will be first examined.

Under Articles 679, 683, and 684 of the code of practice of Louisiana, when there exists a special conventional mortgage or privilege on the property put up for sale, the property is sold subject thereto, and the purchaser pays to the officer so much of the price as exceeds "the amount of the privileges and special mortgages to which such property is subject;" and, in case of sale on twelve months' credit, if there exist on the property any privileges or special mortgage, in favor of other persons than the judgment creditor, and who are preferred to him, the purchaser is entitled to retain in his hands out of the price the amount required to satisfy the privileged debts and special hypothecations to which the property sold was subject, but is bound to give his obligation for the surplus of the purchase money, if there be any, and subscribe his obligation at twelve months' credit, with security; but if the price offered is not sufficient to discharge the privileges and mortgages existing on the property, having a preference over the judgment creditor, there shall be no adjudication, and other property, if there be any, shall be seized.

If, therefore, the mortgage claimed by Mrs. Young was conventional or special, and had been properly recorded and not legally renounced, and it was prior to that of Nalle & Co., no sale of the mortgaged property could be made under the junior incumbrance of the latter, unless the price bid was sufficient to discharge the prior lien. But if the prior mortgage was legal or judicial, this requirement did not apply, and the property passed to the purchaser subject to the payment of the prior lien. *Alford* v. *Montejo,* 28 La. Ann. 593; *Godchaux* v. *Dicharry's Succession,* 34 La. Ann. 579.

The Circuit Court held that the mortgage asserted by Mrs. Young was a special mortgage, which took precedence over that of Nalle & Co.; that her renunciation was void, and, the price bid not being sufficient to discharge this prior special mortgage, that the sale could not be confirmed and must be set aside.

By the civil code, the partnership or community of acquets and gains exists between husband and wife by operation of law, unless otherwise stipulated in the contract. The separate

property of the wife is that which she "brings into the marriage, or acquires during the marriage by inheritance or by donation made to her particularly," and "is divided into dotal and extra dotal. Dotal property is that which the wife brings to the husband to assist him in bearing the expenses of the marriage establishment. Extra dotal property, otherwise called paraphernal property, is that which forms no part of the dowry." *Fleitas* v. *Richardson*, No. 2, 147 U. S. 550, 553; Arts. 2332, 2399, 2334, 2335.

By Article 2337, "by dowry is meant the effects which the wife brings to the husband to support the expenses of the marriage."

Article 2383 declares: "All property, which is not declared to be brought in marriage by the wife, or to be given to her in consideration of the marriage or to belong to her at the time of the marriage, is paraphernal."

Mrs. Young claimed an indebtedness on the part of her husband to her, arising from his having received the proceeds of a life insurance policy on the life of her father in her favor for $5000, and the additional sum of $2500, being an amount which came to her from her father's estate, and was received by him. This was paraphernal property. The wife has a legal mortgage on the property of her husband, "for the restitution or reimbursement of her paraphernal property." Art. 3319. "Conventional mortgage is that which depends on covenants. Legal mortgage is that which is created by operation of law. Judicial mortgage is that which results from judgments." Art. 3287. A legal mortgage results by operation of law, and "no legal mortgage shall exist, except in the cases determined by the present code." Arts. 3311, 3312.

Art. 2376 declares that the wife has a legal mortgage on the property of her husband for the restitution of her dowry as well as for the replacement of her dotal effects; and by Art. 2379 it is provided that, during the marriage, the husband may, with the consent of his wife, "be authorized by the judge, with the advice of five of the nearest relations of the wife, or friends, for want of relations, to mortgage, spe-

cially for the preservation of his wife's rights, the immovables which he shall designate; and then, the surplus of his property shall be free from any legal mortgage in favor of his wife;" while Art. 2390 is as follows: "The wife may alienate her paraphernal property with the authorization of her husband, or in case of refusal or absence of the husband, with the authorization of the judge; but should it be proved that the husband has received the amount of the paraphernal property thus alienated by his wife, or otherwise disposed of the same for his individual interest, the wife shall have a legal mortgage on all the property of her husband for the reimbursing of the same. The husband may release the mass of his property from this legal mortgage, by executing a special mortgage in the manner required in the preceding section, for dotal effects." Thus it appears that a legal mortgage on all the husband's property exists until a special mortgage is executed according to the foregoing provisions, and the law does not contemplate a legal and a special mortgage existing at the same time. And the legal mortgage of the wife to affect third persons must be recorded in the office of mortgages for the parish where the property lies. Arts. 3342 to 3349.

Mrs. Young must either stand upon her legal mortgage resulting from the receipt of her paraphernal property, and recognized by the judgment of July 9, 1881, decreeing a separation of property, or a judicial mortgage arising from that judgment, or on the contract between herself and Mrs. Metcalfe, by which Mrs. Metcalfe purported to transfer to her an indebtedness due by Wade R. Young, secured on the property in controversy. If her mortgage be legal or judicial, its existence would not be a bar to the confirmation of a sale for an amount insufficient to satisfy it; and, moreover, it could not rank the special conventional mortgage of Nalle & Co., because it was not recorded until subsequently.

It is, indeed, insisted that it was altogether invalid under Art. 2428: "The separation of property, although decreed by a court of justice, is null, if it has not been executed by the payment of the rights and claims of the wife, made to appear

by an authentic act, as far as the estate of the husband can meet them, or at least by a *bona fide* non-interrupted suit to obtain payment." *Chaffee* v. *Sheen,* 34 La. Ann. 684, 690; *Nachman* v. *Le Blanc,* 28 La. Ann. 345, 346; *Bertie* v. *Walker,* 1 Rob. (La.) 431, 432. But this becomes immaterial, as whatever rights, if any, might be claimed under it, it could have no effect as against Nalle & Co. for want of record.

According to Arts. 3345 and 3349, all mortgages, whether conventional, legal or judicial, are required to be recorded as provided, and the preservation of the legal mortgage or privilege in favor of a married woman depends on the record of the evidence of her mortgage or privilege in the mortgage book of the parish where the property is situated; and that evidence, if not by written instrument, must consist of "a written statement, under oath, made by the married woman, or her husband, or any other person having knowledge of the facts, setting forth the amount due to the wife, and detailing all the facts and circumstances on which her claim is based." There was no such evidence as last named here, and no such inscription until after the mortgage to Nalle & Co. had been given and registered. *Lovell* v. *Cragin,* 136 U. S. 130, 149.

The transaction between Mrs. Metcalfe, Young, and Mrs. Young appears to have been that Mrs. Metcalfe being indebted to Young, and Young indebted to Mrs. Metcalfe, the respective debts were discharged by agreement and compensated each other, but that it was agreed that Young's indebtedness to Mrs. Metcalfe should be kept alive for the benefit of Mrs. Young, upon the consideration on Mrs. Young's part of the release of her paraphernal claims against her husband. Compensation had, however, taken place and the two debts were reciprocally extinguished. Arts. 2130, 2207, 2208.

This was the necessary effect by operation of law, and when the principal obligation was discharged the mortgage fell with it and would not be revived though the indebtedness were reacknowledged in favor of another. *Smith* v. *McWaters,* 22 La. Ann. 431, 432; *Davidson* v. *Carroll,* 20 La. Ann. 199; *Schinkel* v. *Hanewinkel,* 19 La. Ann. 260.

Again, contracts between husband and wife are forbidden

in Louisiana except as specified. Contracts of sale between them "can take place only in the three following cases: 1. When one of the spouses makes a transfer of property to the other, who is judicially separated from him or her, in payment of his or her rights. 2. When the transfer made by the husband to his wife, even though not separated, as a legitimate cause, as the replacing of her dotal or other effects alienated. 3. When the wife makes a transfer of property to her husband, in payment of a sum promised to him as a dowry." Arts. 1790, 2446 ; *Carroll* v. *Cockerham*, 38 La. Ann. 813, 824.

This transaction was an attempt to extinguish the wife's general mortgage by the transfer of the special mortgage of a third party, satisfied by the act as between the immediate parties thereto, and if it could be done at all, it could only be when taking place in accordance with Articles 2379 and 2390, and recorded as required by Article 3345 ; and, as already seen, these articles were not complied with.

But were this otherwise, the judgment of 1881 did not recognize her alleged special mortgage, which recognition was evidently not prayed for, and recognized only her legal mortgage in complete disregard of her special mortgage if she had had any.

The rendition of judgment for all her paraphernal claims without any recognition of a special conventional mortgage to secure them would seem to have concluded the fact that none such then existed, or at least furnishes such persuasive proof thereof as must be controlling on this record. *Nicolson* v. *Citizens' Bank*, 27 La. Ann. 369.

Conceding, then, that the renunciation by Mrs. Young in favor of Nalle & Co. was ineffectual, her legal or judicial mortgage, if outstanding, was nevertheless subordinate to their mortgage and not entitled to precedence. In the jurisprudence of Louisiana, and under the statutes of that State, the right of redemption from a decree in foreclosure does not obtain. If a prior mortgage exists, the prior mortgagee is not a necessary party, and purchasers take subject to the prior lien. If there be a subsequent mortgage, the prior mortgage containing the *pact de non alienando* as Nalle & Co.'s mortgage

did, the mortgagee therein need not be made a party, but must take notice of the proceedings to enforce the prior mortgage at his peril. He may, however, apply to set aside the sale on proper grounds. *Dupasseur* v. *Rochereau*, 21 Wall. 130; *Watson* v. *Bondurant*, 21 Wall. 123; *Carite* v. *Trotrot*, 105 U. S. 751.

As heretofore noticed, Mrs. Young and her husband prayed for redemption, which is not, in any foreclosure case, allowable as such; while so far as their pleadings are regarded as seeking the setting aside of the sale and for a resale, we find no adequate grounds for according that relief.

> *The decree of June 9, 1890, is reversed with costs; and the cause remanded to the Circuit Court with instructions to enter a decree overruling the objections to the sale of July 30, 1887; dissolving the injunction; adjudicating the property to Mrs. Mary Nalle, wife of Eustis F. Golson, and ordering the delivery of possession to her.*