**O'CONNOR et al. v. TOWNSEND.**

No. 10659.

Circuit Court of Appeals, Eighth Circuit.

Feb. 5, 1937.

J. A. Tellier, of Little Rock, Ark., for appellants.

Eugene R. Warren, of Little Rock, Ark. (J. W. House, C. H. Moses, and W. H. Holmes, all of Little Rock, Ark., on the brief), for appellee.

Before SANBORN, WOODROUGH, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This is an appeal from an order of the trial court confirming the sale of certain bridge properties under a decree (the second) of foreclosure of a mortgage. For former appeal, see Bovay v. Thompson (C. C.A.) 78 F.(2d) 343.

The case was brought in the federal court on the ground of diversity of citizenship.

The facts are undisputed and are as follows: On July 26, 1933, the United States District Court of Arkansas entered a decree (the first) in the case of Harold G. Townsend, Trustee, v. White & Black Rivers Bridge Company, foreclosing a certain mortgage or deed of trust executed by said Bridge Company to said trustee on March 1, 1927, as supplemented by another mortgage or deed of trust executed between the same parties dated February 6, 1928. The mortgage was given to secure the payment of $400,000 first mortgage gold bonds of the Bridge Company. The decree in that cause provided that the defendant Bridge Company should pay to the plaintiff the sum of $439,276 with interest thereon within thirty days, and upon its failure to do so, upon application of plaintiff, the bridges and bridge properties described in the mortgage should be sold for the satisfaction of the indebtedness. The money was not paid.

On January 5, 1934, upon application of plaintiff, the court ordered a sale of the properties of the Bridge Company, consisting mainly of two bridges; and on February 9, 1934, the Commissioner appointed by the court to make the sale sold the properties to the Des Arc & Powhatan Bridge Company, a corporation organized to represent the bondholders' protective committee

which had on deposit about 99 per cent. of all outstanding bonds. Both bridges were sold together for $50,000.

Objections were filed to the order confirming the sale and to the prior proceedings by several intervening minority bondholders, and by one stockholder and creditor of the Bridge Company; and the court as a condition of approving the sale ordered the successful bidder to increase the bid to $100,000, which being done in open court, the sale was approved and confirmed.

An appeal was taken by the objectors; and this court, on June 12, 1935, filed an opinion [Bovay v. Townsend, 78 F.(2d) 343, 105 A.L.R. 359] holding that the trial court erred in causing the two bridges, which were about eighty-five miles apart, to be sold together instead of as separate units; and also held that the trial court erred in failing to order a resale upon finding in effect that the bid of $50,000 was inadequate.

Pursuant to the mandate of this court, the trial court made an order on July 15, 1935, reversing its previous order confirming the sale. That court also entered a decree (the second) on the same date ordering a resale of the properties separately or as a whole for a total of not less than $100,000.

Said second decree provided that the purchaser or purchasers of the bridge properties, upon confirmation of the sale, should make payments in cash of an amount necessary (a) to pay the cost of said foreclosure; (b) expenses of the sale; (c) compensation of the Commissioner; (d) an amount sufficient to pay the expenses, fees, and other charges of the trustee, etc.; and (e) compensation of the receiver of the mortgaged property and unpaid indebtedness and obligations of the receiver then due.

Said decree further provided that the balance of the purchase price of the mortgaged property might be paid in cash or with First Mortgage Gold bonds of the Bridge Company, said purchase price to be paid within ten days after the confirmation of the sale of the property.

The decree did not order the sale to be on credit as provided in section 6243, Crawford & Moses' Digest of the Statutes of Arkansas.

On October 23, 1935, the Commissioner filed his written report that the sale had been held in accordance with the terms of the decree and order of the District Court, and that the property was sold to the Des Arc & Powhatan Bridge Company for $110,000.

No appraisement of the value of the property was made, the original mortgage having provided as follows: "Article VI. Section 13: * * * The Company will not at any time insist upon or plead, or in any manner whatsoever claim or take the benefit or advantage of any stay of execution or extension law now or at any time hereafter in force, nor will it claim, take or insist on any benefit or advantage from any law now or hereafter in force providing for the valuation or appraisement of the mortgaged property, or any part thereof, prior to any sale or sales thereof to be made pursuant to any provision herein contained or to the decree of any court of competent jurisdiction."

On December 21, 1935, Charles J. O'Connor and others, appellants herein, as bondholders or as creditors and stockholders, filed objections to the confirmation of said sale on the ground, among others, that the property was sold at a grossly inadequate price and that the court had ordered the sale for cash when it should have been ordered sold upon a credit of not less than three months nor more than six months, as provided by section 6243 of Crawford & Moses' Digest of the Statutes of Arkansas, which reads as follows: "§ 6243. Terms of sale. Sales of personal property made by order of the court shall be on a credit of three months; sales of real property on a credit of not less than three nor more than six months, or on installments equivalent to not more than four months' credit on the whole, to be determined by the court. In all sales on credit, the purchaser shall execute bond, with good surety, to be approved by the person making the sale, which bond shall have the force of a judgment, and, in sales of real property, a lien shall be retained on the property for its price."

The objectors made requests for certain findings of fact and conclusions of law. These were refused by order of the court, and exceptions allowed.

On January 22, 1936, the court entered an order confirming the sale, from which orders appellants bring this appeal.

The points raised by appellants in their brief are as follows:

1. That section 6243, above quoted,·and the decisions of the Supreme Court of Arkansas construing and applying said section, constitute a rule of property in the State of Arkansas; and that said rule is binding on the federal courts sitting in the state, when they are dealing with property located in the state.

2. That said section 6243 was in force on the date the mortgage herein sought to be foreclosed was executed; and that said statute is as much a part of the contract as if it had been written therein.

3. The power to prescribe the·laws of descent, alienation, transfer, and sale of real or personal property, whether by deed, devise, descent, or judicial proceedings, is a power reserved to the states by Amendment 10 to the Constitution of the United States, and may not be invaded by the United States courts.

Appellee contends that the Rules of Decisions Act applies only in the absence of federal legislation; that the foreclosure in the case at bar was governed by 28 U.S.·C.A. § 847 (set out in part in the margin*), which controls the sale of land under mortgage foreclosures in federal courts; that the steps to be taken therein in foreclosing a mortgage between citizens of different states is not a question of substantive law, but of practice.

Appellee further contends that federal statutes are controlling in all cases where the federal court has jurisdiction of the case, either by reason of diversity of citizenship or of a federal question.

The main question we have to decide is whether section 6243, Crawford & Moses' Digest of the Statutes of Arkansas, and the applicable decisions of the Supreme Court of Arkansas, constitute a rule of property or a rule of procedure only.

It is, of course true as a general rule that federal courts sitting in a state follow the rules of property in such state established by statute or by decisions of its highest courts, unless such rules are contrary to the Constitution of the United States.

In Edward Hines Yellow Pine Trustees v. Martin, 268 U.S. 458 at page 462, 45 S. Ct.˙543, 545, 69 L.Ed. 1050 the court said: "Both the meaning of statutes of a state and the rules of the unwritten law of a state affecting property within the state are peculiarly questions of local law to be ascertained and established by the state courts. For that reason federal courts ordinarily hold themselves bound by the interpretation of state statutes by the state courts * * * and follow rules of property declared by state courts."

And again (at page 464 of 268 U.S., 45 S.Ct. 543, 546, 69 L.Ed. 1050): "To avoid the uncertainty and injustice which result from 'the discordant elements of a substantial right which is protected in one set of courts and denied in the other, with no superior to decide which is right' (Brine v. Insurance Company, 96 U.S. 627, 24 L. Ed. 858), this court has not hesitated, when there has been a conflict of decision between it and the state courts affecting a rule of property within the state, to overrule its own decisions and to follow the state decisions once it has become evident that they have established a 'rule of property' as the settled law of the state."

Brine v. Ins. Co., 96 U.S. 627, 24 L.Ed. 858, a case decided in 1877, before the passage of the Federal Judicial Sales Act of 1893, was a suit brought in the federal court to foreclose a mortgage, in the form of a deed of trust, on certain land. A final decree was made, after foreclosure and sale, which allowed the defendant 100 days in which to pay the mortgage debt, following the rules of the federal court; and if said debt were not paid within that time, the special master was ordered to sell the land for cash. When the mortgage was made, there was a statute in force in Illinois which allowed a debtor one year after sale to redeem the land sold. The question arose whether the state statute or the rules and practice of the federal court governed the rights of the parties as to the time of redemption. The Supreme Court held that the Illinois statute, being in force when the mortgage in question was made,

---

* 28 U.S.C.A., § 847: "Sales; real property under order or decree. All real estate or any interest in land sold under any order or decree of any United States court shall be sold at public sale at the courthouse of the county, parish, or city in which the property, or the greater part thereof, is located, or upon the premises or some parcel thereof located therein, as the court rendering such order or decree of sale may direct, said sale to be upon such terms and conditions as said˙court shall approve."

entered into the contract between the parties, and must control the determination of their rights.

In Bucher v. Cheshire Railroad Co., 125 U.S. 555, at page 583, 8 S.Ct. 974, 978, 31 L.Ed. 795, the court said: "It is also well settled that where a course of decisions, whether founded upon statutes or not, have become rules of property as laid down by the highest courts of the state, by which is meant those rules governing the descent, transfer, or sale of property, and the rules which affect the title and possession thereto, they are to be treated as laws of that state by the federal courts."

In Faulds v. Tilton (C.C.A.) 192 F. 297, it was held that under the rule that federal courts, in respect to the validity of title to real property, will administer the law of the state in which the property is situated, where a decree for a sale of real property, entered by the federal court without a provision for confirmation, followed the practice authorized by the state courts and the principle embodied in the state law, the deed, without confirmation, gave the purchaser possession and constituted color of title, though the decree, in failing to require confirmation, did not conform to the usual federal practice. The court said (at page 300 of 192 F.): "Manifestly the United States Circuit Court for the Southern District of Illinois, entering this decree, followed this practice authorized by the state courts and the principle of Illinois law relating to the judicial sale of real estate, embodied in this cause. That being the case, the appellee got possession of the underlying rights by the deed, as also color of title, for in respect to the validity of title to real estate, the administration of the state law notwithstanding its non-conformity to the usual federal practice, is within the power of the federal courts, the state law in that respect being the law, not only in the state courts, but in the federal courts as well."

In 25 C.J. p. 839, the statement is made: "Rules of Property. State decisions establishing a rule of property will be followed by the federal courts when called upon to determine the state law, if it is possible to do so, and the case does not involve questions of right under the constitution and laws of the United States, or questions of general or commercial law. This rule has been applied with respect to real property, and the title thereto; * * * the sale and record of title of real estate; the priority of mortgages; the nature and extent of the rights of mortgagees; the construction of deeds; * * * a claim of title based on execution sales * * *."

And under "Matters of Substance" (p. 852), it lists the following: " * * * the ownership of property; estates or interests in property; conveyances of real estate; * * * property rights created by state statutes; * * * foreclosures and sales thereunder, and the right of redemption * * *."

In Nalle v. Young, 160 U.S. 624, 16 S.Ct. 420, 40 L.Ed. 560, it was held that in an equity foreclosure in a federal court, the requirements of the state law should be complied with.

In Deck v. Whitman (C.C.) 96 F. 873, at page 875, the court said:

"The courts of the United States possess jurisdiction of a foreclosure suit only when between citizens of different states or when other ground of federal jurisdiction exists. It is obviously just and proper that these courts, in administering the equitable remedy in foreclosure suits affecting real estate, should enforce the rights of both parties to the mortgage contract, as defined and regulated by statute of the state and as enforced by the state chancery courts, and for the same reason should adopt substantially the same practice as to the method of making the decree effective, so far as this may be done.

"A lack of substantial conformity with statutory regulations of the state, in the foreclosure of a mortgage of real estate, would, or might, result in something more or less than the rights of the parties, as understood when the contract was executed. It would introduce 'discordant elements' and confusion, the real intention of the parties being effectuated in one set of courts and denied in the other."

The court further said (at page 891 of 96 F.): " * * * in a suit for the foreclosure of a mortgage executed upon real estate situate within the jurisdiction of the court, it is the right, and within the power, of a circuit court of the United States, if not its duty, to conform to any statutes of the state regulating the remedy for the enforcement of the mortgage contract, and that the practice of those courts in thus conforming to the local law is recognized as proper by the supreme court of the United States."

It is claimed that the rule laid down by Crawford & Moses' Digest, § 6243, has been established by the decisions of the highest court of Arkansas as a rule of property.

Welch v. Hicks, 27 Ark. 292, was a suit to foreclose a vendor's lien. In the course of the opinion the court said, referring to the provisions in regard to the sale of personal and real property: "These provisions being enacted under the general head above stated, and Secs. 405 and 408 expressly embracing other liens as well as mortgages, and Sec. 407 declaring in general terms that sales of real property, made by order of court, shall be on a credit, etc., we are of opinion the legislature intended no exception to the rule, but that all sales, by order of court, should be on a credit."

In Worsham v. Freeman, 34 Ark. 55, at page 63, which was a suit to foreclose a mortgage, the court in its opinion said: "The court erred in directing the land to be sold for cash. Welch v. Hicks, 27 Ark. 292; Gantt's Dig., Secs. 4705–8."

Fry v. Street, 37 Ark. 39, was a suit to foreclose a vendor's lien on land. The court in its opinion said (at page 43 of 37 Ark.):

"But though the plaintiff's right to a foreclosure of the lien is clear, it was an error in the Court below, in its decree, to direct a sale of the property for cash, as it virtually did, by not directing the sale to be on credit, and fixing the credit to be given.

"The Statute says that sales of real property by order of Court, shall be on a credit of not less than three nor more than six months, or in installments equivalent to not more than four months' credit on the whole. Sec. 4708 Gantt's Digest; Worsham and wife v. Freeman, 34 Ark. 55; Williams et al. v. Ewing & Fanning, 31 Ark. 229; Welch v. Hicks, 27 Ark. 292.

"For this error the decree must be reversed and the cause remanded to the Court below, with directions to render a decree for a foreclosure of the lien, and for a sale of the property on a credit, as required by the Statute."

This case was distinguished in Neely v. Lee Wilson & Co., 126 Ark. 253, 190 S.W. 431, 432. In the Neely Case, which involved the foreclosure of a drainage district lien, the court said:

"The statute of Arkansas provides that judicial sales must be on terms of credit, 'not less than three months.' Kirby's Digest, § 6236. The foreclosure decree failed to specify the terms upon which the land should sell. Counsel for appellant claims that Fry v. Street, 37 Ark. 39, is a case on all fours with the case at bar. That is a direct appeal from the decree of foreclosure before the sale was made, reported, and confirmed. In the case at bar, the land was sold on three months' credit, and the sale was reported and confirmed. The appellant appealed from the foreclosure decree, but failed to prosecute his appeal. The cases are quite different.

"Jurisdictional errors in a decree ordering the sale of land cannot be cured by confirmation of the sale. The failure to set out the terms of sale in a decree is in no sense jurisdictional. All irregularities not jurisdictional will be cured by confirmation of the sale. The confirmation of sale in the case at bar cured this defect."

De Yampert v. Manley, 127 Ark. 153, 191 S.W. 905, involved the foreclosure of a mortgage. In its opinion the court said (at page 160 of 127 Ark., 191 S.W. 908):

"The statute itself * * * prescribes the minimum period of credit on foreclosure sales, and the decree, being silent as to the terms, must be construed with reference to the statute.

"A valid confirmation would have cured the irregularity, but a sale in direct conflict with the terms of the statute in this respect should not be confirmed. It was the duty of the court to disapprove the report and reject the sale when it was shown that it had not been made in compliance with the express directions of the statute. We must treat the sale therefore as unconfirmed, there having been no valid order of confirmation; and it follows that the court was correct in setting aside the sale, but the decree should be based upon the fact that the sale had not been made in conformity with the directions of the statute."

In Childs v. Ferguson, 181 F. 795, 797, this court, in dealing with a similar question ruled by the local law of Nebraska, held that it was compelled to follow the law of Nebraska. It was there said:

"In McCormick v. Paddock, 20 Neb. 486, 488, 489, 30 N.W. 602, the Supreme Court of that state held that an order of confirmation of a sale under a decree made after the death of a party whose in-

terest in the subject-matter passed to another by her death, and the decree itself, were voidable, but not void, and that they were impervious to collateral attack, although there had been no revivor; and it cited in support of this conclusion its prior decision to a like effect in Jennings v. Simpson, 12 Neb. 558, 565, 11 N.W. 880. In the year 1894, in the case of Harter v. Twohig, 158 U.S. 448, 454, 15 S.Ct. 883, 39 L.Ed. 1049, the Supreme Court of the United States cited these cases and declared that this was the settled law in Nebraska. The mortgages foreclosed under the decree in this suit were made between 1890 and 1896, and this, the settled law of Nebraska at that time, became a part of the contracts between the parties under the decisions of the Supreme Court in Bronson v. Kinzie, 1 How. 311, 11 L.Ed. 143, and Brine v. Hartford Fire Ins. Co., 96 U.S. 627, 634, 24 L.Ed. 858, and the other cases there cited, and rendered the decree, the sale, and the confirmation impervious to collateral attack. * * *

"Because it was the settled law of the state of Nebraska, and a rule of property in that state when the mortgages in suit were made, that sales of mortgaged lands and their confirmations after the death of the mortgagors defendants under decrees ordered against them before their decease were voidable, but were not void, and were not open to collateral attack, the sale of the land here in question and the confirmation thereof were impervious to the assault of the appellants on the application for the writ of assistance, and there was no error in its issue."

See, also, De Vaughn v. Hutchinson, 165 U.S. 566, 17 S.Ct. 461, 41 L.Ed. 827; Gray v. Havemeyer, 53 F. 174 (C.C.A. 8); Clark v. Huckaby, 28 F.(2d) 154, 157, 67 A.L.R. 1456 (C.C.A. 8); Rubenstein v. Nourse, 70 F.(2d) 482 (C.C.A. 8).

It is to be noted that the federal statute and the state statute are not by their terms in direct conflict. The federal statute does not forbid the sale to be upon credit; the terms and conditions of the sale are left to the approval of the court.

It goes without saying that a sale upon credit may be of considerable value to the debtor mortgagor. It is a right of the mortgagor which relates to the passage of title from the mortgagor to the purchaser at the foreclosure sale. It may increase the bid at the foreclosure sale, thereby benefiting the mortgagor. This right to such a rule as the state statute provides is a substantial one and should be preserved.

Our conclusion from the foregoing is that the rule in section 6243, Crawford & Moses' Digest of the Statutes of Arkansas, is a rule of property and is binding on the federal courts sitting in that state. See cases cited supra.

It follows that the order confirming the sale in the instant case must be set aside, and the case remanded for further proceedings not inconsistent with the views above expressed. It is so ordered.