509 F.2d 83
 TRAVELERS INSURANCE COMPANY, a Connecticut Corporation,
Plaintiff-Appellant,
v.
M. T. LAWRENCE, Jr., et al., Defendants-Appellants,
and
Everett R. Langford, United States Marshal for the District
of Oregon, Appellee,
and
Wolfsen M. C. Ranch, a limited partnership, Assignee of
Judgments and Purchaser at Marshal's Sale, Appellant.
 No. 73--1812.
 United States Court of Appeals,
Ninth Circuit.
 Dec. 23, 1974.
 
 1
 John H. Buttler (argued), Cake, Hardy, Buttler, McEwen & Weiss, Portland, Or., for plaintiff-appellant.
 
 
 2
 Kathryn H. Baldwin, Atty. (argued), Dept. of Justice, Civ. Div., Washington, D.C., for appellee.
 
 
 3
 Before KILKENNY and SNEED, Circuit Judges, and JAMESON,* District Judge.
 
 OPINION
 JAMESON, District Judge:
 
 4
 Appellants, the plaintiff and defendants in an action to foreclose a mortgage on real property and the purchaser at foreclosure sale, challenge the validity of a commission of appellee, the United States Marshal for the District of Oregon, in the amount of $75,765, taxed as costs for selling the property pursuant to the decree of foreclosure. The commission was computed pursuant to 28 U.S.C. § 1921. The appeal is from an order overruling appellants' objections and confirming the Marshal's commission.
 
 I. BACKGROUND
 
 5
 Plaintiff, Travelers Insurance Company, brought this suit in federal court, on the basis of diversity jurisdiction, to foreclose its mortgage on the 'M. C. Ranch' located in Lake and Harney Counties, Oregon. Cross claims were filed by the holders of two subsequent mortgages. A judgment and decree was entered on July 31, 1972 in favor of the plaintiff and the two subsequent mortgage holders for the foreclosure of the three mortgages and directing that the property
 
 
 6
 '. . . shall be sold as a unit by the United States Marshal on execution at the Court house door in Lake County, Oregon, after giving notice required by law; . . . that the United States Marshal give to such purchaser a certificate of sale, and after the time allowed by law for redemption, unless said property be redeemed, a deed.'
 
 
 7
 The court also ordered that the proceeds of the sale be distributed '(f)irst, to pay the costs and expenses of sale'.
 
 
 8
 On September 17, 1972 the clerk of court signed a writ of execution commanding the Marshal to sell the property 'described in the attached judgment and decree as therein directed'.[1] On September 20, the Marshal issued a 'Notice of Marshal's Sale', prepared by counsel for plaintiff, describing the property and setting the sale for November 1, 1972. As required by Oregon law, the notice was published in local newspapers.
 
 
 9
 Prior to the sale, the judgments of Travelers and the second mortgage holders were sold and assigned to Wolfsen M. C. Ranch, a limited partnership. The sale was held on November 1, 1972, in Lakeview, Oregon. The Marshal drove to Lakeview the day before the sale, conducted the sale between 10:00 and 10:30 A.M. on November 1, and returned to Portland. Wolfsen was the only bidder at the sale, bidding $5,050,000.00, the approximate amount of the two judgments it held. The Marshal filed his 'Return on Execution', indicating his compliance with the 'writ of execution, judgment and decree'.[2] The sale to Wolfsen was then confirmed. No money was paid to the Marshal by Wolfsen or anyone else in connection with the purchase at the sale.
 
 
 10
 Thereafter, the Marshal filed his 'Statement of Costs' in which he claimed his statutory commission of $75,765 out of the proceeds of the sale pursuant to 28 U.S.C. § 1921.[3] It is undisputed that had the action been conducted in state court (as it could have been) the officer making the sale would have been limited to a fee of $10.00 for conducting the sale, plus $2.00 for making a certificate of sale and $5.00 for a sheriff's deed.[4]
 
 
 11
 Objections to the commission were filed by the appellants.[5] In overruling the objection, the court held that the taxation of marshals' costs is discretionary, but if costs are taxed, the court must follow the formula in 28 U.S.C. § 1921; the Marshal had seized or levied on property and received and paid over money as required by § 1921; and the prescribed fees or commissions apply to judicial as well as execution sales.
 
 
 12
 Appellants contend that (1) the provision for a marshal's commission in 28 U.S.C. § 1921 is not applicable because there was no seizure or levy and the Marshal did not receive or pay over any money; (2) under the Erie doctrine the commission is unauthorized because it is in conflict with the substantive law of Oregon, which protects redemption rights by limiting the sheriff's fee to $10.00 on a foreclosure sale; (3) if § 1921 is applicable, the court had discretion to fix the commission at a lesser sum, or (4) if not, the imposition of a commission bearing 'no relationship to the value of the services rendered' was an abuse of discretion.
 
 II. APPLICABILITY OF 28 U.S.C. § 1921
 
 13
 Prior to 1962, the statute establishing marshals' fees had remained relatively unchanged since its enactment in 1853. The statute read in pertinent part:
 
 
 14
 'Only the following fees of United States marshals shall be collected and taxed as costs, except as otherwise provided:
 
 
 15
 'For serving a writ of possession, partition, execution, or any final process, the same mileage as is allowed for the service of any other writ, and for making the service, seizing or levying on property, advertising and disposing of the same by sale, set off, or otherwise according to law and receiving and paying over the money, the same fees and poundage as are or shall be allowed for similar services to the sheriffs of the States, respectively, in which the service is rendered . . ..' (emphasis added).
 
 
 16
 In 1962 Congress amended this provision of § 1921 to read:
 
 
 17
 'Only the following fees of United States marshals shall be collected and taxed as costs, except as otherwise provided:
 
 
 18
 For serving a writ of . . . execution . . ., $3;
 
 
 19
 'For the preparation of any notice of sale . . . or bill of sale, $3;
 
 
 20
 'For seizing or levying on property (including seizures in admiralty), disposing of the same by sale, setoff, or otherwise and receiving and paying over money, commissions of 3 percentum on the first $1,000 of the amounts collected and 1 1/2 per centum on the excess of any sum over $1,000. If not disposed by marshal's sale, the commission shall be in such amount as may be allowed by the court.' (emphasis added).[6]
 
 
 21
 A comparison of the old statute with the new indicates that the only substantial change made by the 1962 amendment was to substitute a uniform 'commission' for the marshal's services for the provision that the marshal should be paid the fees 'allowed for similar services to the sheriffs of the States'. Both expressly provide that the marshal is required to do three things before he is entitled to a commission. He must (1) seize or levy on the property; (2) dispose of it by sale; and (3) receive and pay over money. Appellants contend that requirements (1) and (3) were not met in this case.
 
 
 22
 Does the sale of real property pursuant to a decree of mortgage foreclosure involve a seizure or levy within the meaning of § 1921? In finding § 1921 applicable, the district court relied on Hill v. Whitlock Oil Services, Inc., 450 F.2d 170 (10 Cir. 1971). In Hill, as in this case, a United States Marshal sold real property pursuant to an order in a foreclosure action. Refusing to grant the marshal's commission of $117.81 that was subsequently assessed, the lower court held that under Kansas law, the sale was a judicial rather than an execution sale and did not involve a levy or seizure as required by § 1921.
 
 
 23
 In reversing, the Tenth Circuit agreed that 'under Kansas law no seizure or levy was made', but held that 'federal, not local, law applies in the interpretation and application of federal statutes'. Id. at 173. Recognizing that the 'controlling consideration here is legislative intent', the court concluded that in using the words 'seizing or levying' Congress intended to include judicial sales. Id. at 174.
 
 
 24
 The court noted that "Levy' is an ambiguous word, with its meaning dependent on the context in which it is used'. Id. It relied on the general definition in the Uniform Enforcement of Foreign Judgment Acts, § 1(c) which defines 'levy' as follows:
 
 
 25
 "Levy' means to take control of or create a lien upon property under any judicial writ or process whereby satisfaction of a judgment may be enforced against such property'.
 
 
 26
 Applying that definition, the court concluded that the Marshal 'took control of the land under a court order', and thereby in effect levied on the land. The court stressed that the 'purpose of the pertinent provisions of § 1921 is to reimburse the federal government for services rendered to private litigants by United States marshals' and that the 1962 amendment established a uniform formula for computing the fees. The court concluded that uniformity in the fee structure would be 'impossible if the right of the Marshal depends on the fine distinction which state law may draw.' Id.
 
 
 27
 We agree that in amending § 1921, Congress intended to establish a uniform fee for services rendered by United States marshals. As stated in House Report No. 1724, the purpose of setting a uniform fee was 'to increase the charges to private litigants for the services of U.S. marshals'.[7] We agree also that § 1921 prescribes the fees which may be collected for services performed by a United States marshal, including the sale of property. We cannot agree, however, that state law is to be ignored in determining whether the commission prescribed in § 1921 is applicable. The fees assessed pursuant to § 1921 are based on the nature of the services performed by the marshal. Here the marshal was charged with the responsibility of conducting a mortgage foreclosure sale pursuant to a writ of execution.
 
 
 28
 All parties to this action agree that pursuant to Rule 69(a) of the Federal Rules of Civil Procedure, Oregon law governs the practice and procedures to be followed by the marshal in conducting the sale. See United States v. Yazell, 382 U.S. 341, 355, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966); Custer v. McCutcheon, 283 U.S. 514, 51 S.Ct. 530, 75 L.Ed. 1239 (1931); and Fink v. O'Neil, 106 U.S. 272, 284--285, 1 S.Ct. 325, 27 L.Ed. 196 (1882).
 
 Rule 69(a) provides:
 
 29
 'Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.' (emphasis added).
 
 
 30
 Rule 69(a) and § 1921 are interrelated. Rule 69(a) provides that state procedure shall determine what services the marshal will perform. § 1921 prescribes the fees he may collect for those services.[8] Thus, if state law does not require a levy or seizure to be made when mortgaged property is sold pursuant to a decree of foreclosure, then according to Rule 69(a) the marshal does not make a seizure or levy. Nor should he be compensated for making one under § 1921.[9]
 
 
 31
 The threshold question here, therefore, is whether under Oregon law a levy or seizure is required in selling real property at a mortgage foreclosure sale. In Oregon, as in most states, a real property mortgage constitutes a lien. See O.R.S. § 88.010. According to Oregon law, a decree of foreclosure 'may be enforced by execution as an ordinary decree for the recovery of money'. O.R.S. § 88.060. See Close v. Riddle, 40 Or. 592, 67 P. 932, 933 (1902). That is what happened here. The district court clerk issued a writ of execution directing the Marshal to sell the property pursuant to the decree of foreclosure.
 
 
 32
 While Oregon generally requires a levy in execution sales, O.R.S. § 23.410(3), it does recognize a distinction between those cases wherein the property to be sold is already in the control of the court and those cases in which the court has no custody of any property with which to satisfy a judgment. Where real property is already in the custody of the court, Oregon requires no levy or seizure. The retionale for this distinction was discussed by the Oregon Supreme Court in the early case of Bank of British Columbia v. Page, 7 Or. 454, 456 (1879). There the court expressly held that no levy was necessary to sell mortgaged premises upon a decree of foreclosure. The court stated:
 
 
 33
 'When a judgment, upon which an execution has issued is a lien upon land, it is not necessary that the sheriff should make any formal levy or seizure before proceeding to advertise and sell. The judgment binds the land, which is already in the custody of the law, before the execution issues. The execution comes as a power to enable the creditor to reap the fruits of the seizure already made.
 
 
 34
 'This same rule should govern the sale of mortgaged premises upon a decree of foreclosure, and when an execution is issued thereon, it is not necessary that the sheriff should make a levy upon the premises before proceeding to sell the same.'
 
 
 35
 In German Savings & Loan Soc. v. Kern, 38 Or. 232, 62 P. 788 (1900) the Supreme Court of Oregon reaffirmed its holding in Bank v. Page, stating:
 
 
 36
 'The authorities are uniform that no levy is required under an execution issued upon a decree of foreclosure. Mr. Freemen says that 'if the sale has been ordered by a court of chancery, in a suit in which all the parties in interest were before the court, there is no need of any levy, for the right to sell the land has attached as a consequence of the proceedings in the suit. In truth, the suit may have been for the express purpose of enforcing a pre-existing lien. If so, the title to be acquired by the sale will relate back to the inception of that lien, and cannot possibly be aided by any levy made after the entry of the decree. Hence, under a decree foreclosing a mortgage, no levy need be made on the mortgaged premises.' 2 Freem.Ex'ns (3d Ed.) § 280.' 62 P. at 790.
 
 
 37
 Accord, Lesamis v. Greenberg, 225 F. 449, 453 (9 Cir. 1915); see also Smith v. Dwight, 80 Or. 1, 148 P. 477, 156 P. 573, 578 (1916).[10]
 
 
 38
 This rule is based on the fact that historically the purpose of a levy has been to subject property to the custody of the law so that a judgment debtor might not divert it to any other purpose. State ex rel. Coffey v. District Court, 74 Mont. 355, 240 P. 667, 670 (1925); accord, Winslow v. Klundt, 51 N.D. 808, 201 N.W. 169, 171 (1924); R. S. Corson Co. v. Hartman, 144 W.Va. 790, 111 S.E.2d 346, 354 (1959). Here, the mortgage constituted a lien on the real estate and the court already had custody of the property. A further levy or seizure would have accomplished nothing and under Oregon law was unnecessary. Accordingly, the 'commission' prescribed by § 1921 is not applicable, since the Marshal was not required to make any levy or seizure in executing the writ.
 
 
 39
 This conclusion is supported by the common law rule that a levy or seizure is not required in a judicial sale. The distinction in this regard between judicial sales and the ordinary execution sales is well summarized in 47 Am.Jur.2d Judicial Sales § 3, p. 301 as follows:
 
 
 40
 'The unique characteristics of a judicial sale, as that term is used in this article, would seem clearly to distinguish such sales from execution sales, which are not made pursuant to a judicial order or decree, but under final process, that is, by a writ, issued by the clerk of the court, which does not direct the sale of specifically designated property, does not prescribe the mode of sale, and does not impose conditions on the sale, but merely requires ministerial action by a designated officer to levy on property of a judgment debtor and sell it as prescribed by statute to satisfy a money judgment.'
 
 
 41
 For our purposes, the most significant distinction between a judicial sale and an execution sale is that no levy or seizure is required in a judicial sale. Mortgage foreclosure sales while often made pursuant to a writ of execution and even termed special execution sales have been treated like judicial sales.
 
 
 42
 'Thus the rules governing judicial sales, instead of the statutory provisions regulating execution sales, have been applied to a sale in a mortgage foreclosure proceeding under a special execution, since such proceedings give rise to a special case, which is in the nature of a proceeding in rem wherein the decree of the court operates directly on the mortgaged property, and no levy or seizure is necessary to give effect to the judgment.' (emphasis added).
 
 
 43
 47 Am.Jur.2d Judicial Sales § 3 p. 302 citing Norton v. Reardon, 67 Kan. 302, 72 P. 861, 863 (1903); see also Thomas v. Thomas, 44 Mont. 102, 119 P. 283, 284 (1911).[11]
 
 
 44
 It appears to us also that the definition of 'levy' in the Uniform Enforcement of Foreign Judgments Act, relied upon in Hill,[12] is entirely consistent with our conclusion in this case. § 1(c) states that "Levy' means to take control of or create a lien upon property under any judicial writ or process whereby satisfaction of a judgment may be enforced against such property'. Obviously in the enforcement of a foreign judgment, it is necessary to take control of or create a lien upon property in the state where the foreign judgment is to be enforced.[13] But here the lien has already been created upon the specific property sold. The Marshal simply sold the property pursuant to the foreclosure decree. It was unnecessary to take control of or create any lien upon the property.
 
 
 45
 On the basis of the foregoing analysis of Oregon law, as well as the common law rule that a levy or seizure is not required for a judicial sale of real property, including a sale under a judgment of foreclosure, it is reasonable to conclude that Congress did not intend the percentage formula of § 1921 to apply to mortgage foreclosure sales of real property.[14] Given the value of real property, application of the formula to judicial sales would usually result in excessive fees. Here, under the relevant Oregon law at the time of the foreclosure sale, a $10.00 fee would have been assessed for the sheriff's services in selling the property. Because the action was brought in federal court, the fee for the same service was over seven thousand times greater, i.e. $75,765.00.[15]
 
 
 46
 Prior to the 1962 amendment, the marshal would have received the same fee as the sheriff. In establishing the percentage formula in 1962, the Congress projected that the new fee structure would 'moderately increase the fees charged to private litigants'. The Congress expressly recognized the 'need to avoid raising the cost of litigation in the Federal Courts to a prohibitive level'. H.R.No.1724, 87th Cong.2d Sess. (1962) p. 2. As this case so well demonstrates, to apply the percentage formula to sales of land would impose an unjust burden on the litigants, thus rendering the federal courts an economically unacceptable forum for foreclosure proceedings.[16] We conclude that Congress did not intend that result.[17]
 
 
 47
 Reversed and remanded for a determination of Marshal's fees consistent with this opinion.
 
 SNEED, Circuit Judge (dissenting):
 
 48
 I respectfully dissent. While my brothers and I agree that the fee sought to be recovered by the appellee United States Marshal is not commensurate with the usual market value of undertakings requiring similar effort and skill, it is my opinion that this disparity and its adverse consequences to the mortgagor's equity of redemption should not be eliminated by the interpretation of 28 U.S.C. § 1921 adopted by the majority.
 
 
 49
 It is undisputed that our task is to interpret properly 28 U.S.C. § 1921. My brothers do this by asserting that if the applicable state law does not characterize what the Marshal did in this case as a 'seizure' or 'levy', there can be no 'seizing or levying on property' within the meaning of 28 U.S.C. § 1921. There being no compliance with the terms of § 1921, no commission computed as therein directed has been earned. Local law characterization is required, assert my brothers, because Rule 69(a) of the Federal Rules of Civil Procedure directs that procedure on execution, proceeding supplementary to and in aid of judgment, and proceedings on and in aid of execution (one of which, assert my brothers, is the foreclosure proceedings here involved) 'shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.' Rule 69(a) must be given this effect, the majority asserts, because it and 28 U.S.C. § 1921 are 'interrelated.' Since Oregon law, the state in which the district court is held, does not characterize a mortgage foreclosure sale as a 'seizure' or 'levy', the fee asserted by the Marshal has not been earned. Hence, the district court's contrary holding must be reversed. What commission, if any, the Marshal is entitled to is unanswered.
 
 
 50
 The interpretation of federal statutes under a federal system in which there is no all comprehensive federal common law is always difficult because very frequently the jural relations of the parties are rooted in state law. To this law one must look to determine, for example, whether A owes B and the consequences that flow therefrom. Having ascertained these relations the interpreter of the federal statute must then determine whether these relations are those to which the statute, in whole or in part, refers. This is a determination that is exclusively federal. The state law nomenclature is not controlling--at best it is only suggestive, although frequently strongly so. Thus, if under state law A owes B, state law's mere designation of this relationship as a trust without more does not require that a federal court treat the relationship as a trust for the purposes of applying a federal statute using the term 'trust.' Whether the relationship is a 'trust' for the purposes of the federal statute is a federal question exclusively.
 
 
 51
 For reasons that will be set forth below, it is by no means clear that the procedures available to the Marshal consisted exclusively of those provided by 'the state in which the district court is held.' Other possibly applicable federal statutes, particularly 28 U.S.C. § 2201, must be considered before Rule 69(a) is permitted to govern solely. Moreover, even if Rule 69(a) were the exclusive sovereign, it is clear that whether the procedure so available to, and employed by, the Marshal amounted to a 'seizure' or 'levy' for the purpose of 28 U.S.C. § 1921 is a matter of federal law not controlled by the characterization of these procedures by local law. Thus, the initial issue before us is whether the acts taken by the Marshal amount to a 'seizure' or 'levy.' If so, the question remains whether this characterization is overcome by Rule 69(a). In my judgment the acts of the Marshal in connection with the foreclosure sale do amount to a 'seizure' or 'levy' and this characterization is not overcome by Rule 69(a).
 
 
 52
 As was pointed out in Hill v. Whitlock Oil Services, Inc., 450 F.2d 170 (10th Cir., 1971), the pertinent language now appearing in 28 U.S.C. § 1921 originated in the Act of February 26, 1853, 10 Stat. 161, described in its preamble to be 'An Act to Regulate the Fees and Costs to be allowed Clerks, Marshals, and Attorneys of the Circuit and District Courts of the United States, and for other Purposes.' This language, including that pertaining to the sales of vessels in admiralty, was as follows:
 
 
 53
 For sales of vessels or other property, under process in admiralty, or under the order of a court of admiralty, and for receiving and paying the money, for any sum under five hundred dollars, two and one half per centum; for any larger sum, one and one quarter per centum, upon the excess.For serving a writ of possession, partition, execution, or any final process, the same mileage as is herein allowed for the service of any other writ; and for making the service, seizing or levying on property, advertising and disposing of the same by sale, setoff, or otherwise, according to law, receiving and paying over the money, the same fees and poundage as are or shall be allowed for similar services to the sheriffs of the several States, respectively, in which the service may be rendered.
 
 
 54
 This language remained substantially unchanged until 1962.[1] Congress in 1962 consolidated these two provisions, together with another which made its appearance in 1935,[2] relating to deducting fees paid to auctioneers from those payable to marshals, to achieve the present wording of the pertinent portion of 28 U.S.C. § 1921 which is as follows:
 
 
 55
 For serving a writ of possession, partition, execution, attachment in rem, or libel in admiralty, warrant, attachment, summons, capias, or any other writ, order, or process in any case or proceeding, except as otherwise provided, $3;
 
 
 56
 For seizing or levying on property (including seizures in admiralty), disposing of the same by sale, setoff, or otherwise and receiving and paying over money, commissions of 3 per centum on the first $1,000 of the amounts collected and 1 1/2 per centum on the excess of any sum over $1,000. If not disposed of by marshal's sale, the commission shall be in such amount as may be allowed by the court. In all cases in which the vessel or other property is sold by a public auctioneer, or by some party other than the marshal or his deputy, the commission herein authorized to be paid to the marshal shall be reduced by the amount paid to said auctioneer or other party.
 
 
 57
 One of the purposes of this consolidation appears to have been to establish a schedule of uniform fees not dependent upon those applicable to the sheriffs of the state.[3]
 
 
 58
 There is nothing in the judicial treatment of the 1853--1962 versions of what is now 28 U.S.C. § 1921 or the legislative history of that statute to suggest that the language 'seizing or levying on property, advertising and disposing of the same by sale, setoff, or otherwise according to law and receiving and paying over the money' did not embrace foreclosures by judicial sale. In fact, so far as I have been able to discover, no case interpeting the 1853--1962 versions and raising the issue whether foreclosures by judicial sale is included in the above language exists. Undoubtedly, this is partially because the marshals were paid the same as the local sheriffs and, since no more was allowed by the statute, there was no reason for the marshals or the United States to litigate. On the other hand, had either the mortgagor or mortgagee insisted that no fees were payable because the above language did not embrace foreclosures by judicial sales, it is illogical to assume that the marshals or the United States would not have litigated the matter or in an appropriate manner requested from Congress an amendment to clarify the matter. Neither appears to have happened during the entire 109 years. It is highly probable, however, that during much of this period special masters often were appointed to conduct foreclosure sales. The precise extent of this practice is not revealed by the available authorities; but it must be acknowledged that its existence reduced the necessity to confront the issue with which we are here concerned.[4]
 
 
 59
 Also persuasive of the interpretation I urge is the fact that neither the House nor Senate Report accompanying the enactment of 28 U.S.C. § 1921 suggest that any question concerning the inclusion of foreclosures by judicial sale within the 1853--1962 versions existed. Not a word concerning the matter appears in these Reports. One can not believe that such an issue would have been passed in silence had Congress believed that it existed. It is even more certain that had it existed it would have been brought to the attention of Congress by the Department of Justice prior to the enactment of 28 U.S.C. § 1921 in 1962. Nonexistence is also suggested by the combining in 28 U.S.C. § 1921, of 'seizures in admiralty' and the 'seizing or levying on property.'
 
 
 60
 The view that mortgage foreclosures on land by judicial sales were included within the above language of the 1853--1962 versions and within the same language of 28 U.S.C. § 1921 is strengthened when the history of the law of mortgage foreclosures of the states is considered. The most cursory examination reveals that at all times significant differences existed in the law of the states in this area. Many of these differences had, or have, their roots in such matters as the extent to which equity jurisdiction had developed in the state at the time the foreclosure rules were established, whether the state is a title or lien state, the extent to which strict foreclosure or some variation thereof was and remains permissible, and the relative strength from time to time within each state of the debtor and creditor influences.[5] The diversity which existed in 1853, as well as thereafter, strongly suggests that Congress would employ general language in attempting to describe the services associated with foreclosures for which the marshals were entitled to fees. Great specificity would have required language which described the foreclosure procedure of each of the states in 1853 which, in turn, would have required frequent amendments as procedures were altered and additional states joined the Union. While it can be argued that Congress could have chosen better general language to describe mortgage foreclosures than that which commences with 'seizing or levying on property', it remains true that this language is general in scope and, in my view, has proved elastic enough to embrace mortgage foreclosures under the procedures of each of the states for more than a century.
 
 
 61
 This conclusion is made more firm when it is realized that in 1853 in a number of eastern states there existed foreclosure procedures which consisted of placing the mortgagee in possession through legal process not involving a sale while at the same time there was developing in most, if not all, states the foreclosure by sale in an equitable court action.[6] At the same time, Pennsylvania permitted foreclosure by a legal process under a statutory writ of scire facias sur mortgage which operated in a manner similar to that open to an ordinary execution creditor.[7] Surely Congress in 1853 did not employ language that embraced only Pennsylvania foreclosures or, at most, only those employing legal, but not equitable, processes. The language adopted in my opinion was intended to embrace all foreclosures conducted by marshals qua marshals without regard to whether a legal process resembling levy and execution was employed.
 
 
 62
 This conclusion in my view is not altered by Rule 69(a). Indeed, it is by no means clear that Rule 69(a) applies to mortgage foreclosures accomplished through judicial sales. Its origin suggests that it was intended to follow in substance 28 U.S.C. § 727 (1940), which dealt with remedies by execution or otherwise available to a 'party recovering a judgment in any common-law cause in any district court', and 28 U.S.C. § 729 (1940), which made available in proceedings to vindicate civil rights 'the common law, as modified and changed by the Constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held' when the federal law was not 'adapted to the object' of such proceedings and where federal law failed 'to furnish suitable remedies.'[8] Moreover, Rule 69(a), as already mentioned, must be read in conjunction with 28 U.S.C. § 2001 which under the teaching of Yazoo & M.V.R. Co. v. Clarksdale, 257 U.S. 10, 19, 42 S.Ct. 27, 29, 66 L.Ed. 104 (1921) is applicable 'to judicial sales made under order or decree of the court and requiring confirmation by the court for their validity, and . . . does not extend to sales under common-law executions which issue by mere praecipe of the judgment creditor on the judgment without order of the court, and in which the levy and sale of the marshal are ministerial, do not need confirmation to give them effect, and only come under judicial supervision on complaint of either party.' Rule 69(a) unquestionably is applicable to the latter type of sale, Weir v. United States, 339 F.2d 82, 85 (8th Cir., 1965), while 28 U.S.C. § 2001 has been held applicable to mortgage foreclosures. Feldman Inv. Co. v. Connecticut General Life Ins. Co., 78 F.2d 838, 841 (10th Cir., 1935).
 
 
 63
 It is nonetheless true that in mortgage foreclosures in federal courts state laws neither inconsistent with, nor operating to frustrate, federal policies may be operative. United States v. Montgomery, 268 F.Supp. 787 (D.C.Kan., 1967). It is doubtful, however, that this use of local law is dependent upon the authority of Rule 69(a). It is more likely that it springs from the ever present necessity in a federal system of accommodating the legitimate interests of both the state and federal governments.
 
 
 64
 However, even if it should so rest upon Rule 69(a), the Notes of the Advisory Committee indicate that a predecessor to 28 U.S.C. § 1921, viz. 28 U.S.C. § 574, was intended to remain applicable notwithstanding the promulgation of Rule 69.[9] It follows that the issue in this case, as already indicated, is simply whether the actions of the Marshal amounted to a 'seizure' or 'levy' within the meaning of 28 U.S.C. § 1921. The Notes of the Advisory Committee give no indication that 28 U.S.C. § 1921 was to be 'interrelated' with Rule 69(a) in the manner accomplished by the majority.
 
 
 65
 Thus, I believe there was in this case a 'seizure' or 'levy' within the meaning of 28 U.S.C. § 1921. Also I submit that all other requirements of that statute were met[10] and that the Marshal on behalf of the United States is entitled to the fee he claims under the circumstances of this case. A court in which the foreclosure proceedings occur which is troubled by the excessive amount that the statutory formula yields can refuse to tax costs, but the trial judge in this case was correct when he concluded that should any fee be allowed to the Marshal it must be that which is provided by 28 U.S.C. § 1921. The remedy for this situation, if such be needed, must be developed by Congress.[11] Our intervention in the manner adopted by the majority can only create confusion regarding the scope of 28 U.S.C. § 1921 and prevent the achievement of uniformity of fees, a principal purpose of the 1962 amendments.
 
 
 
 *
 Honorable W. J. Jameson, United States Senior District Judge for the District of Montana, sitting by designation
 
 
 [1]
 The writ also commanded the Marshal to make distribution of the proceeds of the sale and to perform all things 'as directed in said judgment and decree'
 
 
 [2]
 The return recited the sale to Wolfsen for $5,050,000, 'less than the aggregate amount owing under the two judgments' held by Wolfsen, and providing that the amount bid be entered of record in satisfaction of the judgments, first deducting the fee or commission to be paid the Marshal, as finally determined by the court, this amount to be paid by Wolfsen
 
 
 [3]
 The remaining costs, totaling $890.07, have been paid and are not in dispute. These included publication charges, mileage, and 'Execution $3.00, Notice $3.00, and Marshal's Deed $3.00'
 
 
 [4]
 The Oregon statute prescribing sheriff's fees in effect when the Marshal's sale was conducted, O.R.S. 21.410, reads in pertinent part:
 'The sheriff . . . shall, in all civil suits, actions and proceedings, collect in advance the following fees:
 (10) For serving or collecting an execution or decree other than for the sale of land, one percent on the amount realized as shown by the sheriff's return.
 (11) For selling land on execution or decree, $10.
 (12) For making a conveyance of real property, sold on any process, to be paid by or for the grantee, $5.
 (14) For making a certificate of sale of real property, $2.
 
 
 [5]
 Prior to the sale appellants had moved the court for an order fixing the Marshal's fee. The court denied the motion subject to the right of the parties to object subsequent to the sale to any fee or commission claimed by the marshal
 
 
 [6]
 These commissions are turned into the Federal Treasury. See 31 U.S.C. § 725v(b), and 28 U.S.C. § 572(a)
 
 
 [7]
 The report concludes:
 'The Committee on the Judiciary is aware of the need to avoid raising the cost of litigation in the Federal Courts to a prohibitive level. However, the committee is of the view that it would not unduly burden private litigants to require them to bear a greater share of the cost of their litigation. Accordingly, this bill would moderately increase the fees charged to private litigants for the services of U.S. marshals. It is estimated that the legislation will result in an increase in income to the Federal Government of about $150,000 a year.' H.R.No. 1724, 87th Cong.2d Sess. (1962) p. 2.
 
 
 [8]
 The Senate Report reads in part: 'Section 1921 . . . specifies the fees to be charged by U.S. marshals for the service of various types of process on behalf of private litigants'. S.R.No.1785, 1962 U.S.Code Cong. & Admin.News, p. 2240. Neither the Act itself nor the legislative history makes any reference to the meaning of 'seizing or levying'
 
 
 [9]
 In Hill, the court apparently did not consider the effect of Rule 69(a). The property sold was located in Kansas. As indicated infra, Kansas like Oregon would not require a levy or seizure in a foreclosure sale of real property. Norton v. Reardon, 67 Kan. 302, 72 P. 861, 863 (1903)
 
 
 [10]
 The distinction has also been recognized in Oregon in prescribing sheriff's fees. A commission is allowed 'for serving or collecting an execution or decree other than for the sale of land'. A fee of $10.00 is prescribed 'for selling land on execution or decree'. (See note 4)
 
 
 [11]
 In a different context the distinction between judicial and execution sales was recognized by the Supreme Court in Yazoo & M.V.R. Co. v. Clarksdale, 257 U.S. 10, 19, 42 S.Ct. 27, 66 L.Ed. 104 (1921)
 
 
 [12]
 Counsel have not cited, nor have we found, any case, other than Hill, holding that a levy or seizure is required to give effect to a judgment foreclosing a mortgage on real estate
 
 
 [13]
 This would be true also with respect to the enforcement of a judgment within a state if the court did not have control of any specific property with which to satisfy the judgment
 
 
 [14]
 It does not appear from the legislative history that the meaning of the terms 'levy' and 'seizure' or the effect of the amendment on the foreclosure of mortgages on real property were expressly considered by Congress. The estimate of a total increase in income of about $150,000 a year (see note 7) is hardly consistent with an intent to impose the percentage formula on foreclosure sales of real property
 
 
 [15]
 As noted supra, the action could have been brought in state court. While the plaintiff had a choice of forum, the defendants did not and are confronted with a judgment against them over $75,000 in excess of what it would have been had the action been filed in state court
 
 
 [16]
 Had the plaintiffs anticipated the assessment of a $75,000 fee for the sale of the property, the action would no doubt have been filed in state court. That option of course would not be available to the other litigants in an action in which the United States is a party and either files in or removes to federal court
 
 
 [17]
 This conclusion is supported by the fact, as indicated, supra, that the terms 'seizure' and 'levy' have a specific meaning founded in the common law. Historically, a mortgage foreclosure sale did not involve either a 'seizure' or a 'levy'. In the absence of express language to the contrary, we are unwilling to hold that Congress intended to accord those terms a definition broad enough to cover mortgage foreclosure sales, where no levy or seizure is required. Having reached this conclusion, we need not consider the other issues raised by the appellants
 
 
 [1]
 The pertinent portions of 28 U.S.C. § 1921 immediately prior to the 1962 revision of this section read as follows:
 For serving a writ of possession, partition, execution, or any final process, the same mileage as is allowed for the service of any other writ, and for making the service, seizing or levying on property, advertising and disposing of the same by sale, setoff, or otherwise according to law and receiving and paying over the money the same fees and poundage as are or shall be allowed for similar services to the sheriffs of the States, respectively, in which the service is rendered;
 In all cases in which the vessel or other property is sold by a public auctioneer or by some party other than the marshal or his deputy, the fee herein authorized to be paid to the marshal shall be reduced by the amount paid to said auctioneer or other party:
 For sale of vessels or other property, under process in admiralty, or under the order of a court of admiralty, and for receiving and paying over the money, 2 1/2 per centum on any sum under $500, and 1 1/4 per centum on the excess of any sum over $500.
 
 
 [2]
 49 Stat. 513 (Part 1)
 
 
 [3]
 H.Rep. No. 1724, 87th Cong., 2d Sess., 5 (1962)
 
 
 [4]
 For an example of foreclosure by a special master, see Deck v. Whitman, 96 F. 873 (Cir.Ct. E.D.Tenn., 1899). Foreclosure sales were conducted by marshals. See Nalle v. Young, 160 U.S. 624, 16 S.Ct. 420, 40 L.Ed. 560 (1896); Blossom v. Milwaukee & C.R. Co., 3 Wall. (70 U.S.) 196, 18 L.Ed. 43 (1866); Black v. Black, 77 F. 785 (Cir.Ct. E.D.Pa., 1896); § 803 Simkin's Federal Practice (3d ed. 1938)
 
 
 [5]
 For a careful analysis of these roots and the law of foreclosure, see Osborne, Mortgages (2d ed. 1970), 647--743
 
 
 [6]
 Osborne, supra at 656--7, 661--3
 
 
 [7]
 Osborne, supra at 658
 
 
 [8]
 Moore's Federal Practice, § 69.01(2) (1973). 28 U.S.C. § 729 (1940) now appears in 42 U.S.C. § 1988. 28 U.S.C. § 727 (1940) has been repealed because it is now covered by Rule 69(a)
 
 
 [9]
 See Fed.Rules of Civ.Proc., 28 U.S.C.A. Rule 69
 
 
 [10]
 Appellants contend that, because they bid in their mortgage at the sale, the Marshal did not 'receive and pay over money' as required by 28 U.S.C. § 1921. This argument places form over substance. The practice of bidding in mortgages was developed for the convenience of litigants to prevent the circuity which would result if a mortgagee, purchasing at the sale, were required to pay money in which would be returned to him forthwith. The Marshal did all that was required of him here and did in effect receive and pay over money. See The Cesare Augusto, 39 F.Supp. 751 (N.D.Cal., 1941)
 
 
 [11]
 The power to appoint a special master to conduct the foreclosure sale presumably still exists. Rule 53(a) F.R.Civ.Proc