In re Kristine Ballantyne
EWELL, Debtor.

Kristine Ballantyne EWELL,
Debtor–Appellant,

v.

Steven D. DIEBERT, Trustee–Appellee.

No. 90–16498.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 14, 1992.

Decided March 3, 1992.

Andrew D. Craig, and Richard A. Harris, Wild, Carter, Tipton & Oliver, Fresno, Cal., for debtor-appellant.

Albert J. Berryman, Lerrigo, Nibler, Berryman, Coleman & Bennett, Fresno, Cal., for trustee-appellee.

Before GOODWIN, FLETCHER and BRUNETTI, Circuit Judges.

GOODWIN, Circuit Judge:

Kristine Ewell, a chapter 11 debtor, appeals the district court's dismissal as moot of her consolidated appeals of two bankruptcy court rulings: (1) the bankruptcy court's order authorizing the sale of two real properties belonging to the bankruptcy estate and (2) the bankruptcy court's denial of Ewell's motion to set aside the close of escrow and to stay the order authorizing the sale. We affirm the district court.

## I. *BACKGROUND*

This appeal involves the February 1990 sale by the chapter 11 trustee of two parcels of real property located in Fresno County, California, which constitute the principal assets of the bankruptcy estate. The parcels consist of approximately 406 acres commonly referred to as "the New Town property" and 538 acres commonly referred to as "the Auberry property."

Appellant Ewell (the Debtor) filed a voluntary chapter 11 petition on July 1, 1988. Appellee Steven D. Diebert (the Trustee) was appointed trustee on August 23, 1988. Between 1973 and 1975, Diebert had been employed by Pacific Agricultural Services, of which Dan Ewell was the president and principal shareholder. Dan Ewell is the brother of Ben Ewell, the Debtor's former husband. Ben Ewell is the chief executive officer of Millerton New Town Development Company, the purchaser of the properties that are the subject of this appeal.

In November 1989, the bankruptcy court authorized the sale of the New Town and Auberry properties to New Cities Development Group (New Cities) for a purchase price of $5,100,000 and $2,959,000, respectively, subject to a number of contingencies including the purchaser's review and approval of all water contracts affecting the properties. The New Town property was to be paid for in cash at the close of es-

crow, and the Auberry property was to be paid for with a combination of cash and a five year promissory note secured by a deed of trust. As the end of the 30–day escrow period approached, New Cities requested an additional 120–day "due diligence" period so that it could negotiate a water reservation agreement with the county. The bankruptcy court denied New Cities' motion, and the deal fell through.

Millerton New Town Development Company (the Buyer) then offered to purchase the properties for a total price of $4,509,800. In contrast to New Cities' offer, the Buyer's offer contained no contingencies and provided for an 11–day escrow period. The price was considerably lower. In contrast to New Cities' offer of $12,500 per acre for the New Town property and $5,500 per acre for the Auberry property, the Buyer offered $7,000 and $3,100 per acre respectively. The Buyer agreed to a nonrefundable cash deposit of $250,000 and a total down payment of $500,000, with the balance consisting of debt assumption and a secured promissory note. The Debtor objected to the offer on various grounds, including inadequacy of the price. She submitted a declaration to the bankruptcy court that included two appraisals which valued the properties at $17,500 per acre.

The bankruptcy court approved the sale to the Buyer at a hearing on January 22, 1990. The Agreement of Sale provided that escrow would close 11 days after bankruptcy court confirmation of the sale. The bankruptcy court order authorizing the sale was filed on January 25 and entered on January 30. Escrow closed on February 2, 1990, eleven days after the hearing, and the Debtor filed a notice of appeal of the authorization order the same day. The Debtor made no effort to obtain a temporary stay or expedited hearing or otherwise to block the consummation of the sale prior to the close of escrow. On February 9, the Debtor filed a motion to set aside the close of escrow and for a stay of the order

authorizing the sale pending appeal of that order. No stay issued, and the Trustee recorded the grant deed again on February 22, 1990. On March 12, the bankruptcy court denied the Debtor's motion. The Debtor filed her notice of appeal of these rulings on March 15, and on June 20 the district court ordered that appeal consolidated with the Debtor's earlier appeal of the authorization order.

On September 6, 1990, the district court entered a memorandum decision dismissing the appeals as moot. The Debtor timely appealed.

## II. ISSUES

We consider two issues on appeal: (1) whether the district court erred in dismissing the Debtor's appeals as moot because of her failure to obtain a stay of the authorization of sale, as required by the statutory mootness rule, 11 U.S.C. § 363(m); and (2) whether the sale was nevertheless invalid and outside the protection of section 363(m) because the Buyer was not a good faith purchaser.

The Debtor contends that, by operation of Bankruptcy Rules 7062 [1] and 9014, the automatic 10–day stay of execution on judgments provided by Fed.R.Civ.P. 62(a) applies to bankruptcy sales and that such a stay was in effect at the time escrow closed on February 2, 1990. The Debtor proceeds to argue that even though she never obtained a stay pending appeal, the sale has effectively been stayed because escrow closed in violation of the Rule 62(a) automatic 10–day stay. We disagree. It is highly questionable whether the Rule 62(a) stay on execution of judgments had any application to the judicially authorized sale of estate property in a bankruptcy proceeding. Even if we assume that Rule 62(a) applied to the sale at issue, the Debtor's appeals nevertheless are rendered moot by her failure to obtain a stay pending appeal pursuant to Bankruptcy Rule 8005.

1. Bankruptcy Rule 7062 was amended in 1991 to provide explicitly that Fed.R.Civ.P. 62(a) does not apply to the sale or lease of property of the estate pursuant to 11 U.S.C. § 363. At the time of the sale in question, however, Rule 7062

contained an exception only for the "use" of estate property under section 363 and did not mention sales or leases. The question of whether Rule 62(a) applied to section 363 sales and leases was left to the courts.

The Debtor also contends that her appeals are not moot because the Buyer was not a good faith purchaser. Again we disagree. The bankruptcy court found there was no evidence that the Trustee colluded with the buyer and further found that the sale was fair and reasonable and in the best interests of creditors. These findings were not clearly erroneous.

### III. *DISCUSSION*

#### A. *Standard of Review*

■ We review the district court's decision de novo. *In re Arizona Appetito's Stores, Inc.,* 893 F.2d 216, 218 (9th Cir. 1990). The factual findings of the bankruptcy court are reviewed for clear error, and its conclusions of law are reviewed de novo. *Id.*

#### B. *The Section 363(m) Mootness Rule*

■ The Trustee moved for authorization to sell the properties pursuant to 11 U.S.C. § 363(b)(1), which provides that "the Trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." The property rights of good faith purchasers participating in such sales are protected by section 363(m), which provides that

> the reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

The Debtor could have made a timely motion for a stay pending appeal. Bankruptcy Rule 8005 provides that "[a] motion for a stay of the judgment, order or decree of a bankruptcy judge ... pending appeal must ordinarily be presented to the bankruptcy judge in the first instance." Rule 8005 also authorizes the bankruptcy judge to issue stays sua sponte and provides for application to the district court or bankruptcy appellate panel for a stay pending appeal if such relief cannot be obtained from the bankruptcy judge. The Debtor did not seek a stay under Rule 8005 until February 9, 1990, a week after the close of escrow and ten days after entry of the order authorizing sale.

#### C. *Application of Fed.R.Civ.P. 62(a)*

■ Rule 62(a) provides that, except for circumstances not relevant here, "no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of ten days after its entry." Bankruptcy Rule 7062 makes Rule 62(a) applicable in adversary proceedings in bankruptcy, and Bankruptcy Rule 9014 makes Rule 7062 applicable in contested matters raised by motion, such as the court-authorized sale at issue here. *See* L. King, 9 *Collier on Bankruptcy* ¶ 7062.02, at 7062–4 (15th ed. 1991). The 10–day stay begins when the judgment is entered and expires at the end of the tenth day after entry. *Id.* ¶ 7062.04, at 7062–4. Because the authorization order was entered on January 30 and escrow closed on February 2, the Debtor maintains that the sale is invalid because it occurred in violation of the automatic 10–day stay.

We have not previously considered the application of Rule 62(a) to bankruptcy sales. In *In re Combined Metals Reduction Co.,* 557 F.2d 179 (9th Cir.1977), we dismissed as moot a minor creditor's appeals of various sales and leases of estate property by the trustee pursuant to bankruptcy court orders. One of the sales had occurred within 10 days of entry of an order authorizing sale. The appellant argued that this sale violated the 10–day automatic stay of Rule 62(a). We did not reach the issue, however, and instead held that we were powerless to void the sale because the purchaser had not been made a party to the appeal and that therefore the appeal was moot:

> Given the trial court's ruling [denying the appellant's application for a stay], the transfer of title and the failure to join the transferees as parties, it would

appear that this court cannot at this time restore the status quo or grant any relief even if the district court did err in not applying Fed.R.Civ.P. 62(a). We therefore will not rule on the issue of whether the automatic stay provision of the sale is applicable to Chapter X proceedings; any such decision on our part would be in effect an advisory opinion.

*Id.* at 192.

Since *Combined Metals* was decided, we consistently have affirmed the importance of finality in bankruptcy sales. *See In re Onouli–Kona Land Co.*, 846 F.2d 1170, 1172 (9th Cir.1988) ("Finality in bankruptcy has become the dominant rationale for our decisions; the trend is towards an absolute rule that requires appellants to obtain a stay before appealing a sale of assets."). We have applied the mootness rule whether or not the purchaser is a party to the appeal or the purchaser has taken irreversible steps following the sale. *Id.* Indeed, we have recognized only two exceptions to the section 363(m) mootness rule: (1) where real property is sold subject to a statutory right of redemption, and (2) where state law otherwise would permit the transaction to be set aside. *In re Mann*, 907 F.2d 923, 926 (9th Cir.1990).

Our cases strongly suggest that, even if Bankruptcy Rule 7062 had not been amended, Rule 62(a) would have no application to judicially authorized sales of estate property in bankruptcy proceedings. By its terms, Rule 62(a) applies only to the "execution" or "enforcement" of a judgment. The Debtor is aided by Bankruptcy Rule 9002(5), which provides that as used in those Federal Rules of Civil Procedure made applicable to bankruptcy cases the term "judgment" includes "any order appealable to an appellate court." We doubt, however, that the sale at issue here can be characterized as the execution or enforcement of a judgment.

In *Travelers Insurance Co. v. Lawrence*, 509 F.2d 83 (9th Cir.1974), this court dis-

cussed at length the difference between execution sales and judicial sales. We noted five distinctions, the most important of which is that "no levy or seizure is required in a judicial sale" because the property is already in the custody of the court. *Id.* at 89; *see also O'Brien v. Kelly*, 597 F.Supp. 17, 19 (D.Alaska 1984) (relying on *Travelers*), *aff'd mem.*, 786 F.2d 1175 (9th Cir. 1986). Here, the two properties sold by the Trustee were part of the bankruptcy estate within the jurisdiction of the bankruptcy court. This circuit elsewhere has treated bankruptcy sales as judicial sales. *See In re Transcontinental Energy*, 683 F.2d 326, 328 (9th Cir.1982); *In re CADA Inv., Inc.*, 664 F.2d 1158, 1162 (9th Cir.1981). Bankruptcy commentators likewise have taken the view that sales of estate property by the trustee are judicial sales rather than execution sales. *See* 2 *Collier on Bankruptcy* 363.03, at ¶ 363–19 & n. 6; 2 D. Cowans, *Bankruptcy Law and Practice* § 11.9, at 425–26 (1989).

Even if we assume, without deciding, that under the Bankruptcy Rules in effect at the time Fed.R.Civ.P. 62(a) applied to the sale of bankruptcy estate property, the fact that escrow closed within the 10–day stay period does not mean that the sale is either forever void or that it was indefinitely stayed. As section 363(m) makes clear, only a stay *pending appeal* will avoid mootness. Rule 62(a), if it applies at all, provides only a 10–day stay. Debtor argues in essence that because escrow closed during that period, the temporary Rule 62(a) stay was magically transformed into a stay of indefinite duration. Not surprisingly, the Debtor cites no authority for this proposition.

The Trustee sold the property to Buyer pursuant to court authorization almost two years ago, and in that time the Debtor has not managed to obtain a stay of any sort.[2] Whether or not the 10–day stay applied in February 1990, the Debtor's failure since that time to obtain a stay pending appeal necessarily renders her appeals moot.

---

**2.** There is little evidence that the Debtor relied on the operation of the 10–day stay at all. Debtor did not file her motion for a stay until February 9, 1990, which was the tenth day after

entry of the order authorizing sale and the eighteenth day after the hearing at which the bankruptcy court approved the sale.

## D. *Good Faith*

The Debtor argues that the Buyer is not a good faith purchaser subject to the protections of section 363(m) because the Trustee failed to disclose a conflict of interest and accorded preferential treatment to the Buyer over other potential purchasers.

■ Though the Bankruptcy Code and Rules do not provide a definition of good faith, courts generally have followed traditional equitable principles in holding that a good faith purchaser is one who buys "in good faith" and "for value." *See, e.g., In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3rd Cir.1986). Typically, lack of good faith is shown by "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Suchy*, 786 F.2d 900, 902 (9th Cir.1985).

As evidence of lack of good faith, the Debtor argued below that Trustee Diebert had been employed within the last four years by Pacific Agricultural Services (PAS), of which Dan Ewell (Ben Ewell's brother) was the principal stockholder. Diebert declared that he had worked for PAS as Controller from 1973 to 1975 and that he had had no personal, professional or business relationship with Dan Ewell since 1975. The Bankruptcy Court found that Diebert's former employment by PAS did not result in any preferential treatment for either Dan Ewell or Ben Ewell. The court also found that the sale was "in the best interests of all creditors and other parties in interest." In its order authorizing the sale, the court further stated that the terms and conditions of the sale were "fair and reasonable." These findings are not clearly erroneous. There was evidence before the bankruptcy court that the sale would generate sufficient funds to pay all of the Debtor's creditors, including lienholders on the property, and to pay all taxes on the sale.

■ The Debtor also offered the declaration of Dennis Dolan to support her allegation of collusion. Dolan declared that he had represented ValWest Companies in making an offer on the two properties, that the Trustee had told him that a fifty percent cash down payment would be required, and that the Trustee later refused to accept an offer by ValWest that complied with this requirement on the ground that fifty percent down was insufficient. The Trustee objected to this portion of Dolan's declaration on relevance grounds and moved to strike. The bankruptcy court excluded Dolan's statements. The district court did not reach the evidentiary issues because it found that the Debtor's appeals were moot.

Federal Rule of Evidence 401 defines relevant evidence broadly as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probably or less probably than it would be without the evidence." Preferential treatment or collusion would certainly be "of consequence" to whether the sale was fair and in the best interest of creditors. We need not decide whether the district court abused its discretion in excluding the statements, however. Any error was harmless in view of the significant differences between the Buyer's offer and the ValWest offer Dolan discussed, which involved contingencies, a longer escrow period, and no earnest money. The letter from the Trustee to ValWest, which Dolan attached to his declaration, reveals that the Trustee's primary reason for rejecting the ValWest offer was ValWest's insistence on waiting until all approvals for subdivision development were in place before closing the sale and its request for a six-month escrow period after all contingencies had been satisfied.

■ Finally, the Debtor argues that Buyer is not a good faith purchaser because it did not purchase "for value." Debtor relies on *In re Abbotts Dairies* for its statement that courts traditionally have held that "fair and valuable consideration is given in a bankruptcy sale when the purchaser pays 75% of the appraised value of the assets." 788 F.2d at 149. Because the Trustee never had the properties appraised, the Debtor would have us use the appraisals she obtained, which valued the property at $17,500 per acre. This argument is meritless. The bankruptcy court had substantial evidence before it in the Trustee's declarations that the sale price

was approximately equal to the fair market value of the properties "as is." Thus, we cannot say that the Buyer did not give "value" in exchange for the properties.

## IV. *CONCLUSION*

The Debtor's appeals are moot. Because the Buyer was a good faith purchaser, under 11 U.S.C. § 363(m) the sale may not be modified or set aside on appeal unless the sale was stayed pending appeal. It was not, and the court thus cannot grant any effective relief.

AFFIRMED.